**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| RONALD ALEXANDER GARCIA DELGADO, | § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 4:24-cv-00637-ALM |
| EXPERIAN INFORMATION SOLUTIONS, INC., | § § § | |
| Defendant. | § § § | |

### DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S SECOND MOTION FOR SUMMARY JUDGMENT

Nicolas S. Aalberg
Jones Day
90 South Seventh Street, Suite 4950
Minneapolis, Minnesota 55402
T: 612.217.8835
F: 844.345.3178
naalberg@jonesday.com

*Counsel for Defendant*
*Experian Information Solutions, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF THE ISSUES........................................................................................ 3

STATEMENT OF UNDISPUTED FACTS ........................................................................ 3

    I.     Experian's PIN-Based Procedures for File Creation and Assembly. .................... 3

    II.    Plaintiff's Credit File and PIN History. .................................................. 4

    III.   Plaintiff's Allegations and Disclosure of the Truth. ............................................ 5

LEGAL BACKGROUND: THE FAIR CREDIT REPORTING ACT'S STATUTE OF REPOSE .................................................................................................................... 8

LEGAL STANDARD...................................................................................................... 11

ARGUMENT ................................................................................................................. 12

    I.     Experian Did Not Waive Its Repose Defense, nor Is This Motion Barred.......... 12

    II.    Plaintiff's Claim Is Barred in its Entirety but at Least as to the 2018 and 2019 Bank of America Accounts, and He Does Not Establish Actual Damages as to the 2024 USA Finance Account. ................................................. 20

        A.    The Statute of Repose Began Running When the Files Mixed in 2018.................................................................................................... 20

        B.    Successive Publications of Consumer Reports Do Not Restart the Clock for the FCRA's Statute of Repose................................................. 21

        C.    Continued Failure to Detect Already-Made Inaccuracies Does Not Restart the Clock for the FCRA's Statute of Repose............................. 23

        D.    Plaintiff's Claim That Experian Mixed the 2018 and 2019 Bank of America Accounts Is Barred. .................................................... 24

        E.    Plaintiff Does Not Establish Actual Damages as to the 2024 USA Finance Account. .................................................................. 24

CONCLUSION................................................................................................................ 27

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Allianz Versicherungs, AG v. Profreight Brokers, Inc.*,
99 Fed.Appx. 10 (5th Cir. 2004) ............................................................................................... 15

*Allied Chem. Corp. v. Mackay*,
695 F.2d 854 (5th Cir. 1983) ..................................................................................................... 15

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*,
103 F.4th 383 (5th Cir. 2024) .................................................................................................... 16

*Bacharach v. Suntrust Mortg., Inc.*,
827 F.3d 432 (5th Cir. 2016) ............................................................................................... 25, 26

*Balam-Chuc v. Mukasey*,
547 F.3d 1044 (9th Cir. 2008) ................................................................................................... 24

*Bamm, Inc. v. GAF Corp.*,
651 F.2d 389 (5th Cir. 1981) ..................................................................................................... 16

*Boechler, P.C. v. Comm'r of Internal Revenue*,
596 U.S. 199 (2022) ............................................................................................................ 13, 14

*California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
582 U.S. 497 (2017) .......................................................................................................... passim

*Cano v. State Farm Mut. Auto. Ins. Co.*,
425 F. Supp. 3d 779 (W.D. Tex. 2019) ..................................................................................... 22

*Chevron TCI, Inc. v. Capitol House Hotel Manager, L.L.C.*,
No. 22-30271, 2023 WL 5664105 (5th Cir. Aug. 31, 2023) ..................................................... 15

*Cousin v. Trans Union Corp.*,
246 F.3d 359 (5th Cir. 2001) ............................................................................................... 25, 26

*CTS Corp. v. Waldburger*,
573 U.S. 1 (2014) ............................................................................................................... passim

*Energy XXI, GoM, LLC v. New Tech Eng'g, L.P.*,
787 F. Supp. 2d 590 (S.D. Tex. 2011) ...................................................................................... 18

*F.D.I.C. v. RBS Sec. Inc.*,
798 F.3d 244 (5th Cir. 2015) ...................................................................................8, 23, 24

*Galbraith Eng'g Consultants, Inc. v. Pochucha*,
290 S.W.3d 863 (Tex. 2009)..................................................................................9, 11, 13

*Giles v. Gen. Elec. Co.*,
245 F.3d 474 (5th Cir. 2001) ...........................................................................................15

*Golden v. Westlake Fin. Servs., LLC*,
No. 4:24-CV-4093, 2025 WL 2598047 (S.D. Tex. Aug. 5, 2025) ...........................................16

*Hammoud v. Experian Info. Sols.*,
No. 19-13262, 2021 U.S. Dist. LEXIS 214080 (E.D. Mich. July 23, 2021) ...........................14

*Hyde v. Hibernia Nat. Bank in Jefferson Par.*,
861 F.2d 446 (5th Cir. 1988) ...........................................................................................22

*In re Acis Cap. Mgmt., L.P.*,
No. 18-30264-SGJ-11, 2024 WL 4500804 (Bankr. N.D. Tex. Oct. 15, 2024),
*report and recommendation adopted sub nom. In re Acis Cap. Mgmt. LP*, No.
3:24-CV-02036-N, 2025 WL 565676 (N.D. Tex. Jan. 6, 2025)................................................9

*In re Am. Hous. Found.*,
543 B.R. 245 (Bankr. N.D. Tex. 2015).................................................................9, 10, 11, 21

*In re Chris Pettit & Assocs., P.C.*,
No. 22-50591-CAG, 2024 WL 5316334 (Bankr. W.D. Tex. Dec. 16, 2024)................9, 10, 13

*Jett v. Experian Info. Sols., Inc.*,
No. 3:12-cv-2136-D, 2014 WL 2587613 (N.D. Tex. June 10, 2014), *aff'd in
part vacated in part on other grounds*, 614 F. App'x 711 (5th Cir. 2015)........................25, 26

*Johnson v. Geovera Speciality Ins. Co.*,
657 F. App'x 301 (5th Cir. 2016) ....................................................................................11

*Johnson v. United States*,
460 F.3d 616 (5th Cir. 2006) ...........................................................................................18

*Joplin v. Bias*,
631 F.2d 1235 (5th Cir. 1980) .........................................................................................16

*Kar v. Lincoln Auto. Fin. Servs.*,
No. CV 24-05538-KS, 2024 WL 5274620 (C.D. Cal. Nov. 15, 2024) ................................22

*Kariuki v. Tarango*,
     709 F.3d 495 (5th Cir. 2013) ...............................................................................15

*Lee v. United States*,
     765 F.3d 521 (5th Cir. 2014) ...............................................................................15

*Lubke v. City of Arlington*,
     455 F.3d 489 (5th Cir. 2006) ...............................................................................15

*Lucas v. United States*,
     807 F.2d 414 (5th Cir. 1986) ...............................................................................15

*Mailing & Shipping Sys., Inc. v. Neopost USA, Inc.*,
     292 F.R.D. 369 (W.D. Tex. 2013) ........................................................................17

*Matise v. Trans Union Corp.*,
     No. Civ.A 3:96-cv-3353-D, 1998 WL 872511 (N.D. Tex. Nov. 30, 1998) ...........................25

*McCadney v. Hamilton*,
     706 F. App'x 188 (5th Cir. 2017) .........................................................................15

*McDonald v. Equifax Inc.*,
     No. 3:15-cv-3212-B, 2017 WL 879224 (N.D. Tex. Mar. 6, 2017)...........................................24

*McFaul v. Valenzuela*,
     684 F.3d 564 (5th Cir. 2012) ...............................................................................12

*McWhorter v. TransUnion, LLC*,
     No. 1:21-CV-01753-SDG-LTW, 2021 WL 8268164 (N.D. Ga. Aug. 16, 2021)....................22

*Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin*,
     307 S.W.3d 283 (Tex. 2010)....................................................................9, 11, 13

*Nathan v. Whittington*,
     408 S.W.3d 870 (Tex. 2013).............................................................9, 11, 13, 14

*Owens v. TransUnion, LLC*,
     No. 4:20-CV-665-SDJ-KPJ, 2021 WL 5086370 (E.D. Tex. Aug. 30, 2021)
     (Johnson, J.), *report and recommendation adopted as modified*, No. 4:20-CV-
     665-SDJ-KPJ, 2021 WL 4451890 (E.D. Tex. Sept. 29, 2021) (Jordan, J.) ..............................8

*Peart v. Dorel Juv. Grp., Inc.*,
     456 F. App'x 446 (5th Cir. 2012) .........................................................................18

- iv -

*Peterson v. Bell Helicopter Textron, Inc.*,
No. 4:10-CV-365-Y, 2013 WL 12124303 (N.D. Tex. Mar. 13, 2013)....................................17

*Polk v. CitiMortgage, Inc.*,
No. 3:17CV00077-HTW-LRA, 2018 WL 10408903 (S.D. Miss. Feb. 15,
2018) ........................................................................................................................................22

*Prasad v. Holder*,
776 F.3d 222 (4th Cir. 2015) ...................................................................................................24

*Pugh v. Brook (In re Pugh)*,
158 F.3d 530 (11th Cir. 1998) .................................................................................................13

*Rogers v. Bromac Title Servs.*,
755 F.3d 347 (5th Cir. 2014) ...................................................................................................11

*Sapia v. Regency Motors of Metaire, Inc.*,
276 F.3d 747 (5th Cir. 2002) ...................................................................................................26

*Sarabia v. Noem*,
149 F.4th 554 (5th Cir. 2025) ..................................................................................................14

*Spiller v. Ella Smithers Geriatric Ctr.*,
919 F.2d 339 (5th Cir. 1990) ...................................................................................................18

*Taylor v. Trevino*,
569 F. Supp. 3d at 424 ..........................................................................................................9, 13

*Texas Indigenous Council v. Simpkins*,
544 F. App'x 418 (5th Cir. 2013) .............................................................................................17

*Trinity River Auth. v. URS Consultants, Inc.-Texas*,
889 S.W.2d 259 (Tex. 1994).......................................................................................................9

*United States v. Shanbaum*,
10 F.3d 305 (5th Cir. 1994) .................................................................................................14, 15

*Vanzzini v. Action Meat Distributors, Inc.*,
995 F. Supp. 2d 703 (S.D. Tex. 2014) ......................................................................................17

*Verde Mins., LLC v. Burlington Res. Oil & Gas Co., LP*,
360 F. Supp. 3d 600 (S.D. Tex. 2019) ......................................................................................16

*Wagner v. BellSouth Telecommunications, In*c.,
520 F. App'x 295 (5th Cir. 2013) ...................................................................................26

*Walton v. City of Verona*,
82 F.4th 314 (5th Cir. 2023) .........................................................................................14

*Wilkins v. United States*,
598 U.S. 152 (2023)........................................................................................................13

*Williams v. Integon Nat'l Ins. Co.*,
132 F.4th 801 (5th Cir. 2025) ......................................................................................16

*Williams v. Taylor*,
529 U.S. 362 (2000)........................................................................................................23

**STATUTES**

15 U.S.C. § 1681e(b) ............................................................................................... passim

15 U.S.C. § 1681i...................................................................................................23, 24

15 U.S.C. § 1681o...................................................................................................24, 25

15 U.S.C. § 1681p.........................................................................................................8

15 U.S.C. § 1681p(1) ...............................................................................................14, 21

15 U.S.C. § 1681p(2) ................................................................................................ passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15(a) ....................................................................................................16

Fed. R. Civ. P. 8(c) ......................................................................................................15

Fed. R. Civ. P. 12........................................................................................................10

Fed. R. Civ. P. 15....................................................................................................10, 16

Fed. R. Civ. P. 16........................................................................................................17

Fed. R. Civ. P. 16(b) ....................................................................................................18

Fed. R. Civ. P. 16(e) ....................................................................................................15

Fed. R. Civ. P. 30(b)(6)............................................................................................................6, 7, 19

Fed. R. Civ. P. 56(b) ...............................................................................................................18

**INTRODUCTION**

Plaintiff Ronald Alexander Garcia Delgado ("Plaintiff") filed this case alleging that Defendant Experian Information Solutions, Inc. ("Experian") violated 15 U.S.C. § 1681e(b) by mixing Plaintiff's credit file with his son's. Specifically, Plaintiff sued Experian and alleged in his complaint and sworn interrogatory responses that a Bank of America account opened in 2017 (the "2017 Bank of America Account") was not his. Taking him at his word, Experian looked at his file and saw the first credit account he ever opened was in 2023. Given the way Experian creates and assembles credit files, this meant that the earliest time Plaintiff's credit file could have been mixed with his son's was also 2023, well within the Fair Credit Reporting Act (FCRA)'s five-year statute of repose. *See* 15 U.S.C. § 1681p(2). Experian thus lacked a basis to allege a statute of repose defense in its responsive pleadings or move for summary judgment on the issue of repose.

Unfortunately, Plaintiff's allegations were untrue or at least incomplete. After the parties moved for summary judgment in April 2025, Plaintiff disclosed to Experian for the first time that the 2017 Bank of America Account was actually opened by him and belonged to him. Bank of America began reporting this account to Experian starting in April 2017. This means that Experian, who uses individual Personal Identification Numbers (PINs) to create and manage consumer credit files, associated the 2017 Bank of America Account with a specific PIN. In essence, Experian's PIN-based procedures aim to associate a unique PIN with each consumer in Experian's database, and then when new information arrives or is requested, Experian will associate that information with the existing PIN, if it sufficiently matches the personal identifying information ("PII") on file.

The following year, 2018, Plaintiff's son opened his own Bank of America account (the "2018 Bank of America Account"), and then another in 2019 (the "2019 Bank of America

Account"). Bank of America began reporting credit information for these two accounts shortly after they were opened. However, because so much of the PII associated with these accounts overlapped with Plaintiff's own information, Experian's matching processes determined these accounts belonged to Plaintiff and associated them with the existing PIN number assigned to Plaintiff's 2017 Bank of America Account. In other words, the procedure that went awry and caused Plaintiff's file to be "mixed" with his son's dates to 2018, when Experian first received account information belonging to Plaintiff's son, but mistakenly assigned it to the pre-existing PIN associated with Plaintiff's 2017 Bank of America Account. Plaintiff and his son shared that same PIN until this case was filed in July 2024, and Experian was able to identify the mixed file and correct it.

Now, belatedly armed with the truth, it is clear that the FCRA's statute of repose bars Plaintiff's claims. Unlike a statute of limitations, which begins to run when an injury occurs, the time frame for a statute of repose begins "from the date of the last culpable act or omission of the defendant." *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014). As the Supreme Court has explained, "[s]tatutes of repose effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Id.* at 9 (internal quotation marks omitted). In imposing a five-year statute of repose in the FCRA, Congress determined that Experian cannot be liable for acts or omissions that happened more than five years before a case was filed. Here, the "last culpable act" that caused Plaintiff's credit file and his son's to be mixed occurred in 2018, when Experian assigned them the same PIN number. That is well outside the five-year limit, and as a result, Plaintiff's claims are barred. Notably, none of these facts are in dispute. *E.g.,* ECF 82 (Proposed Joint Final Pretrial Order) at 4 ("Stipulations and Uncontested Facts . . . 7. Plaintiff's file was first mixed with his son's on October 27, 2018. 8. The 2018 Bank of America Account

was first mixed on October 27, 2018.  9. The 2019 Bank of America Account was first mixed on April 24, 2019.").

When Experian raised this issue to Plaintiff, his response was that Experian had waived its statute of repose by not including it in its answer, filed nearly a year before Plaintiff disclosed the truth to Experian.  Plaintiff is wrong.  The FCRA's statute of repose is jurisdictional.  And even if it were not, the Court should not countenance Plaintiff's playing fast-and-loose against the material facts.  This Court should grant this motion and dismiss for lack of subject matter jurisdiction.

## STATEMENT OF THE ISSUES

This Motion presents three issues:  whether Experian waived its statute of repose defense by not including it its responsive pleadings, whether this motion is barred by this Court's dispositive motions deadline, and whether Plaintiff's claim against Experian is barred by the FCRA's five-year statute of repose.  *See* 15 U.S.C. § 1681p(2).

## STATEMENT OF UNDISPUTED FACTS

**I.      Experian's PIN-Based Procedures for File Creation and Assembly.**

1.      Experian maintains a database called FileOne® that stores the billions of consumer-related credit information Experian receives from data furnishers, like Bank of America.  This database does not store individual credit reports, but rather operates by associating information stored in tables in the database to unique PINs.

2.      Experian's matching procedures use a series of proprietary algorithms to analyze the personal identifying information received (*e.g.,* full names, Social Security numbers, years of birth, and addresses) to determine when information belongs to one unique consumer, as opposed to multiple or another, and then generates a PIN for each consumer.  The goal of this process is to identify individual consumers and assign each consumer a unique PIN.  Data associated with a

given PIN number will then be included in a consumer report furnished by Experian to one of its customers, if they ask for a credit report for the consumer associated with that PIN.

3.    Account information (also called "tradelines") is reported to Experian by data furnishers.  Tradeline data must include personal identifying information, or Experian will not accept it.  On receipt of a new tradeline, Experian's matching processes evaluate the PII reported to determine if that information matches an existing PIN.  If so, the new account is then associated to the existing PIN and will be included on consumer reports for that PIN going forward.

4.    Experian's PIN creation and file-matching processes are designed to be initially more flexible, to account for the changes in consumer information (*e.g.* moving homes), data entry errors and the like.  This flexibility helps ensure consumer credit files are accurate and include all information related to a given consumer, regardless of small variances.

5.    Consumer credit files can become mixed in a few ways.  If two different consumers share very similar information and are originally assigned two different PINs, those PINS can later be merged if additional information is received that overlaps the PII associated with the two different PINS and Experian's matching processes merge those PINS into a single PIN.  Another way a file can be mixed is for two consumers to share significant amounts of PII and the tradeline reporting history is such so that only a single PIN is generated, but the consumers essentially share it.

6.    Experian has processes for unmixing files, including specially trained dispute operators who are trained in responding to consumer disputes, evaluating if a mixed file is presented, "unmixing" the file, and then placing a special "Do Not Combine" flag to prevent the two files from merging again in the future.

**II.    Plaintiff's Credit File and PIN History.**

- 4 -

7.      On April 12, 2017, Bank of America began reporting the 2017 Bank of America Account to Experian, reporting it with the name "Ronald Alexander Garcia-Delgado," with an address of 10560 NW 27th Street, Suite 101A, Doral, Florida 33172-5928, and without a Social Security number.  This account was assigned to PIN 113237505.  Bank of America never reported any late payments or other derogatory information associated with this account.  Ex. A (Declaration of Mary Methvin) at ¶ 13.

8.      On or about October 27, 2018, Bank of America began reporting the 2018 Bank of America Account to Experian, reporting it with the name "Ronald AlexanderGarcia[1] Diaz," and without a Social Security number.  Because this information overlapped with much of the PII associated with the existing PIN, this account was associated to the same PIN, 1113237505, at this time.  The 2018 Bank of America Account has been reported as a charged-off account since at least April 2022.  *Id*. at ¶ 14.

9.      On or about April 24, 2019, Bank of America began reporting the 2019 Bank of America Account to Experian, reporting it with the name "Ronald Alexander Garcia-Diaz," and without a Social Security number.  Because this information overlapped with much of the PII associated with the existing PIN, 1113237505, the 2019 Bank of America Account was also associated with it.  The 2019 Bank of America Account has been reported as a charged-off account since at least April 2022.  *Id*. at ¶ 15.

### III.    Plaintiff's Allegations and Disclosure of the Truth.

10.     Plaintiff alleged in his complaint and sworn interrogatory responses that the 2017 Bank of America account was not his.  ECF 1 (Complaint) at ¶¶ 151–152; ECF 24-1 at 153 (Plaintiff's Responses to Experian's First Set of Interrogatories at 17).  That means Experian would

---

[1] This is how the data furnisher reported the name to Experian.

not have started a credit file for Plaintiff until July 13, 2023, when Plaintiff opened his first credit account—his 2023 Bank of America account.  ECF 24-1 at 401 (Plaintiff's March 7, 2024 Consumer Disclosures at 4); ECF 25 (Sealed Administrative Report) at 1, 3; ECF 31-5 (Sealed Transcript of Deposition of Experian's Rule 30(b)(6) Representative) at 84:22-85:2.

11.    February 14, 2025 was the deadline for Experian to amend its responsive pleadings. ECF 12 (Scheduling Order) at 1.  Experian did not include a statute of repose argument given that it appeared that Experian mixed Plaintiff's file on July 13, 2023.  ECF 8 (Experian's Answer to Plaintiff's Complaint) at 57–58.

12.    Experian deposed Plaintiff on April 4, 2025.  He testified that "[m]aybe I opened [the 2017 Bank of America account], maybe I didn't," ECF 36-1 at 3–4 (Transcript of Deposition of Plaintiff ("Delgado Tr.") at 65:23-66:5), and ended by testifying that he opened a regular, not credit, account with Bank of America in 2017.  ECF No. 24-1 at 64-65 (Delgado Tr. at 88:7–89:1) ("I think you're referring to credit account.  And in 2017, I did not apply for a credit account." "[F]or the Bank of America I opened a regular account, an account that was not a -- I don't know. That was not a credit card.").

13.    April 17, 2025 was the dispositive motions deadline.  ECF 12 (Scheduling Order) at 2.  Experian did not move for summary judgment on the issue of repose.  ECF 24 (Experian's First Motion for Summary Judgment).

14.    On May 8, 2025, Plaintiff's counsel claimed for the first time that "[] Plaintiff has since discovered the 2017 Bank of America Account does in fact belong to him."  ECF 31 at 11 (Plaintiff's Opposition to Experian's First Motion for Summary Judgment) at 5.

15.    On June 23, 2025, Plaintiff submitted a sworn interrogatory response declaring that "the 2017 Bank of America account belonged to him."  ECF 49-2 at 3–4 (Plaintiff's Responses to

Experian's Second Set of Interrogatories at 2–3). This means Experian started a credit file for Plaintiff in 2017.

16. The parties now agree that Experian first mixed Plaintiff's file with his son's on October 27, 2018, when it added his son's 2018 Bank of America account to Plaintiff's file, and that Experian later added his son's 2019 Bank of America account to his file on April 24, 2019. ECF 82 (Proposed Joint Final Pretrial Order) at 4 ("Stipulations and Uncontested Facts . . . 7. Plaintiff's file was first mixed with his son's on October 27, 2018. 8. The 2018 Bank of America Account was first mixed on October 27, 2018. 9. The 2019 Bank of America Account was first mixed on April 24, 2019."); ECF 98 at 6 (Joint Proposed Jury Instructions at 5) (same); ECF 31-4 (Plaintiff's Expert Report) at 28–29 (same); Ex. B at 3 (Transcript of Deposition of Plaintiff's Expert at 59:3-12) (same); ECF 43-1 at 196–197 (Experian's Expert Report at 15–16) (same); ECF 33 (Transcript of Deposition of Experian's Rule 30(b)(6) Representative) at 38:18–20 (same); Ex. C (November 13, 2025 Email from J. Ristvedt to N. Aalberg) ("[W]e're not disputing Hollon's testimony or the date of the mix. The date of when Mr. Garcia Delgado's file was mixed is a stipulated fact. . . . You can include in your statute of repose argument that Hollon testified as to the date he believed the file was mixed . . . ; we're not disputing that date or his testimony.").

17. Plaintiff filed this lawsuit on July 11, 2024, ECF 1 (Complaint), which was over five years after Experian mixed both the 2018 and 2019 Bank of America accounts. Plaintiff also opened a third account, a positively-reporting USA Finance account, in 2024, and, as the file was already mixed, it was added to that mixed file at that time. *See* ECF 24-1 at 402 (Plaintiff's March 7, 2024 Consumer Disclosures at 5); ECF 24-1 at 8 (Declaration of Experian's Expert at 5) (Once the files were mixed on one personal identification number (PIN), "Experian's system treated the information as belonging in one singular file for one singular consumer."); *accord., e.g.,* Ex. B

(Transcript of Deposition of Plaintiff's Expert) at 59:3-12; ECF 31-4 (Plaintiff's Expert Report) at 35.

18.    Experian now moves for summary judgment on the issue of repose.

## LEGAL BACKGROUND: THE FAIR CREDIT REPORTING ACT'S STATUTE OF REPOSE

The FCRA lays out its statutes of limitations and repose as follows:

An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of—
(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
(2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p.  The Supreme Court has explained the difference between the two:

In the ordinary course, a statute of limitations creates a time limit for suing in a civil case, based on the date when the claim accrued . . . —that is, when the plaintiff can file suit and  obtain relief.  Measured by this standard, a claim accrues . . . when the injury occurred or was discovered. . . .

A statute of repose, on the other hand, puts an outer limit on the right to bring a civil action.  That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant.  A statute of repose bars any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury.  The statute of repose limit is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered.  The repose provision is therefore equivalent to a cutoff, in essence an absolute bar on a defendant's temporal liability. . . . Statutes of repose effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time.

*CTS*, 573 U.S. at 7–10 (cleaned up); *see F.D.I.C. v. RBS Sec. Inc.*, 798 F.3d 244, 251 (5th Cir. 2015) (same); *Owens v. TransUnion, LLC*, No. 4:20-CV-665-SDJ-KPJ, 2021 WL 5086370, at *7 n.4 (E.D. Tex. Aug. 30, 2021) (Johnson, J.), *report and recommendation adopted as modified*, No. 4:20-CV-665-SDJ-KPJ, 2021 WL 4451890 (E.D. Tex. Sept. 29, 2021) (Jordan, J.) (same).

So a statute of repose is "a cutoff" and "absolute bar" on a defendant's temporal liability. *CTS*, 573 U.S. at 8 (cleaned up); *see California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 507 (2017) (same); *In re Am. Hous. Found.*, 543 B.R. 245, 256–257, 260 (Bankr. N.D. Tex. 2015) ("absolute," "no-exceptions cut-off point") (internal quotation marks omitted); *Taylor v. Trevino*, 569 F. Supp. 3d at 424 (same); *Nathan v. Whittington*, 408 S.W.3d 870, 873, 875 (Tex. 2013) (same); *Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin*, 307 S.W.3d 283, 287, 291 (Tex. 2010) (same); *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009) (same). "'[W]hile statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time.'" *In re Chris Pettit & Assocs., P.C.*, No. 22-50591-CAG, 2024 WL 5316334, at *4 (Bankr. W.D. Tex. Dec. 16, 2024) (quoting *Galbraith*, 290 S.W.3d at 866, 868); *see Am. Hous. Found.*, 543 B.R. at 256 (same, and noting "[w]hile statutes of limitation are primarily instruments of public policy and of court management, statutes of repose make the filing of suit within a specified time a substantive part of the plaintiff's cause of action") (internal quotation marks omitted); *In re Acis Cap. Mgmt., L.P.*, No. 18-30264-SGJ-11, 2024 WL 4500804, at *16 (Bankr. N.D. Tex. Oct. 15, 2024), *report and recommendation adopted sub nom. In re Acis Cap. Mgmt. LP*, No. 3:24-CV-02036-N, 2025 WL 565676 (N.D. Tex. Jan. 6, 2025) ("[S]tatutes of repose, [] unlike statutes of limitations, don't just 'procedurally bar an untimely claim,' but 'substantively extinguish the cause of action.'") (cleaned up) (quoting *Nathan*, 408 S.W.3d at 874 (also noting statutes of repose "bar[] the right rather than the remedy on expiration of the statutory periods prescribed" (internal quotation marks omitted))); *Taylor*, 569 F. Supp. 3d at 424 (same); *Methodist*, 307 S.W.3d at 287 (same); *Trinity River Auth. v. URS Consultants, Inc.-Texas*, 889 S.W.2d 259, 261 (Tex. 1994) (same).

A "statute of repose is an affirmative defense [but] . . . '[s]tatutes of repose make the filing of suit within a specified time a substantive part of the plaintiff's cause of action' and this 'cannot be over-ridden by a procedural rule such as Rule 15'"—or Rule 12, or courts' dispositive motions deadlines—"'to save a late-filed and thus, extinguished claim.'"  *Pettit*, 2024 WL 5316334, at *4 (internal quotation marks omitted) (quoting *ACIS*, No. 18-30264, 2024 WL 4500804, at *16).  The court in *Am. Hous. Found.* explained as follows:

> The principle of relation back arises in rules of procedure, whether federal or state. As such, it cannot save an extinguished substantive claim. . . .  Substantive laws trump federal procedural rules, which have no power to abridge, enlarge, or modify any substantive right. . . .  [S]tatutes of repose create a substantive right. . . .  The Federal Rules could not alter the limited nature of the substantive right created by a statute of repose because the statute authorizing the procedural rules subordinates them to substantive rights.

543 B.R. at 258 (cleaned up).  Treating the FCRA's statute of repose under Rule 12 as a waivable "affirmative defense [would be] contrary to the purpose of repose."  *Id*. at 260.  "A defendant should not have to raise an affirmative defense to avoid a claim extinguished by repose.  An affirmative defense is defined as a defendant's assertion of facts that, if true, will defeat the plaintiff's claim.  A statute of repose extinguishes the claim; it ceases to exist."  *Id*. (cleaned up).

Accordingly, a statute of repose is a jurisdictional bar imposed by the legislature that is not required to be included in responsive pleadings and is not precluded by courts' dispositive motions deadlines.  "By establishing a fixed limit, a statute of repose implements a 'legislative decision that as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability.'  The unqualified nature of that determination supersedes the courts' residual authority and forecloses the extension of the statutory period based on equitable principles."  *California Pub. Employees' Ret. Sys.*, 582 U.S. at 508 (quoting *CTS*, 573 U.S. at 9).  "[A] statute of repose can prohibit a cause of action from coming into existence. . . .  If

- 10 -

the action is not brought within the specified period, the plaintiff literally has *no* cause of action." *Id*. at 16 (internal quotation marks omitted and emphasis in original); *see Am. Hous. Found.*, 543 B.R. at 258 ("[T]his Court lacks subject matter jurisdiction now that the [] [] rescission period has expired.  Because of the substantive nature of statutes of repose, courts have treated the effect of the period expiring to be jurisdictional.  Statutes of repose are jurisdictional in nature [and] sometimes referred to as a 'jurisdictional bar.'"); *Nathan*, 408 S.W.3d at 876 ("[T]he Legislature has balanced this hardship against the benefits of the certainty that a statute of repose provides by extinguishing claims upon a specific deadline.  The task of balancing these equities belongs to the Legislature, not to this Court."); *Galbraith*, 290 S.W.3d at 868 ("As already observed, statutes of repose create a substantive right to be free from liability after a legislatively determined period.  In contrast, statutes of limitations are procedural devices operating as a defense to limit the remedy available from an existing cause of action.") (citation omitted); *Methodist*, 307 S.W.3d at 290–91 (same).

## LEGAL STANDARD

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Rogers v. Bromac Title Servs.*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  "A genuine dispute as to a material fact exists only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' and accordingly '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Johnson v. Geovera Speciality Ins. Co.*, 657 F. App'x 301, 303 (5th Cir. 2016) (quoting *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Although the Court "construes 'all facts and inferences in the light most favorable to

- 11 -

the nonmoving party,'" "[s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

## ARGUMENT

The FCRA's statute of repose is jurisdictional, so Experian did not waive its repose defense by not including it in its responsive pleadings, and this motion is not barred by this Court's dispositive motions deadline. In the alternative, Experian satisfies the Fifth Circuit's standard for non-waiver of an affirmative defense, or if it does not, Experian moves for leave to amend its responsive pleadings; further, in the alternative, Experian moves for leave to modify the scheduling order such that this motion is permitted.

Because a consumer reporting agency's publications of consumer reports or continued failure to detect already-made inaccuracies do not restart the clock for the FCRA's statute of repose, Plaintiff's claims are barred since the mixing of the files occurred in 2018, an event that would necessarily lead to all new tradelines being added to the mixed file. At minimum, if the Court were to find that the statute of repose relates to each particular tradeline added to the file, even then Plaintiff's claim is barred as to the 2018 and 2019 Bank of America accounts. That leaves the positively-reporting 2024 USA Finance account, as to which Plaintiff does not and cannot establish actual damages.

## I.    Experian Did Not Waive Its Repose Defense, nor Is This Motion Barred.

*First*, the FCRA's statute of repose, like all other statutes of repose, is jurisdictional, so Experian did not waive its repose defense and this motion is not barred. *See supra*. at 8–11. In his opposition to Experian's proposed jury instruction number 3, Plaintiff argued that the FCRA's statute of repose is only jurisdictional if Congress "clearly states" that it is. ECF 98 at 52 (Joint Proposed Jury Instructions at 51). But the cases that he cited for that proposition all involved

procedural, not substantive, requirements. *See Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 203 (2022) ("[W]e treat a **procedural** requirement as jurisdictional only if Congress 'clearly states' that it is.") (emphasis added); *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (same). His sole defense to that was a single Eleventh Circuit case from 1998 that predates Supreme Court cases like *Wilkins* (2023), *Boechler* (2022), *California Pub. Employees' Ret. Sys.* (2017), and *CTS* (2014), and Fifth Circuit law like *In re Acis Cap. Mgmt.* (2024), *Pettit* (2024), *Taylor* (2021), and *In re Am. Hous. Found.* (2015)—not to mention all the Texas state court cases that Experian cited above (which is not an exhaustive list) like *Nathan* (2013), *Methodist* (2010), and *Galbraith* (2009). *See Pugh v. Brook (In re Pugh)*, 158 F.3d 530, 533–34 (11th Cir. 1998). But the court in *Pugh* held the statutes at issue "[we]re true *statutes of limitations* that can be waived," and instead of holding whether those statutes "[we]re 'substantive' (also called 'jurisdictional') or 'procedural' *statutes of limitations*," it held that "it is more conducive to reasoned analysis, however, to conceptualize this split as a disagreement over whether these code provisions constitute grants of subject matter jurisdiction that leave a court without any authority to hear certain proceedings—i.e., that extinguish the right of action itself by divesting a court of its subject matter jurisdiction over certain proceedings—after the *limitations* period has elapsed, or whether they are true *statutes of limitations* that restrict the power of a court to grant certain remedies in a proceeding over which it has subject matter jurisdiction." *Id*. (emphasis added). *Pugh* never once held that statutes of repose are not jurisdictional or subject to the "clearly states" analysis, or anything of the sort.

Regardless, even if for some reason the "clearly states" analysis applies to substantive statutes of repose, Plaintiff provided in the jury instructions an example of a statute that "clearly" states that it is jurisdictional: "the Tax Court shall have no jurisdiction to enjoin any action or

- 13 -

proceeding unless a timely appeal has been filed." *Boechler*, 596 U.S. at 208 (cleaned up). Here, in a provision of the FCRA entitled "Jurisdiction of courts," Congress barred a consumer's remedy based on "the date of discovery by the plaintiff of the violation that is the basis for such liability," 15 U.S.C. § 1681p(1), and in direct contrast to 15 U.S.C. § 1681p(2), which barred the right itself "5 years after the date on which the violation that is the basis for such liability occurs." *See, e.g., Nathan*, 408 S.W.3d at 874 (explaining that statutes of repose "bar[] the right rather than the remedy on expiration of the statutory periods prescribed" (internal quotation marks omitted)). Plaintiff also cited to *Hammoud v. Experian Info. Sols.*, No. 19-13262, 2021 U.S. Dist. LEXIS 214080 (E.D. Mich. July 23, 2021) and *Sarabia v. Noem*, 149 F.4th 554 (5th Cir. 2025), which involved procedural statutes of limitations, not substantive statutes of repose.

**Second**, in the alternative, Experian satisfies the Fifth Circuit's standard for non-waiver of an affirmative defense, or if it does not, Experian moves for leave to amend its responsive pleadings; further, in the alternative, Experian moves for leave to modify the scheduling order such that this motion is permitted.

Regarding waiver of Experian's statute of repose defense, the Fifth Circuit "ha[s] 'repeatedly rejected waiver arguments when a defendant raise[s] an affirmative defense for the first time at summary judgment—or even later.'" *Walton v. City of Verona*, 82 F.4th 314, 324 (5th Cir. 2023) (no waiver when not raised at summary judgment) (quoting *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 772 (5th Cir. 2017) (no waiver where "[t]he [] issue first surfaced at the summary judgment stage" and "resurfaced closer to and during trial")). This is especially true where the other party "did not clarify the exact [] claim they were bringing," *Walton*, 82 F.4th at 324, "can[not] be said to have clearly or effectively raised the issues that form the heart of this dispute," *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994), or left the defendant with

- 14 -

"no reason to anticipate, in drafting their answer" that the other party would raise the facts that it did. *Kariuki v. Tarango*, 709 F.3d 495, 508 (5th Cir. 2013). "'Where the matter is raised in the trial court in a manner that does not result in unfair surprise, [] technical failure to comply precisely with Rule 8(c) is not fatal.' That is, the defendant does not waive an affirmative defense if 'he raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond.'" *Lucas v. United States*, 807 F.2d 414, 417–18 (5th Cir. 1986) (internal alterations omitted) (no waiver when raised at trial) (quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855–856 (5th Cir. 1983)); *see Lubke v. City of Arlington*, 455 F.3d 489, 499 (5th Cir. 2006) (no waiver when raised in pretrial motion *in limine* two years after the complaint was filed and just weeks before trial); *McCadney v. Hamilton*, 706 F. App'x 188, 189–190 (5th Cir. 2017) (no waiver even when not listed in pretrial order).

Further, "[i]t is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial." *Chevron TCI, Inc. v. Capitol House Hotel Manager, L.L.C.*, No. 22-30271, 2023 WL 5664105, at *6–7 (5th Cir. Aug. 31, 2023) (internal quotation marks omitted) (no waiver when affirmative defense first raised in pretrial order); *see Allied*, 695 F.2d at 855–856 (same); *Allianz Versicherungs, AG v. Profreight Brokers, Inc.*, 99 Fed.Appx. 10, 12 (5th Cir. 2004) (same); *Lee v. United States*, 765 F.3d 521, 524 (5th Cir. 2014) (same); *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 492 (5th Cir. 2001) (no waiver when raised in joint pretrial order over a year after complaint was filed); *Shanbaum*, 10 F.3d at 312 ("[S]ince the district court approved of and filed the pretrial order and since Rule 16(e) provides that the pretrial order controls the subsequent course of action, unless modified by a subsequent order, the presentation of the [] [] defense in the approved-of pretrial order was sufficient to bring that issue before the district court.").

- 15 -

Regarding leave to amend Experian's responsive pleadings under Rule 15, this Court permitted Experian and Plaintiff to "mo[ve] for leave to amend" their pleadings. ECF 12 (Scheduling Order) at 1. "FRCP 15(a) governs leave to amend, stating 'the court should freely give leave when justice so requires' . . . . In the context of motions to amend pleadings, 'discretion' may be misleading, because Rule 15(a) evinces a bias in favor of granting leave to amend. A court must have a substantial reason to deny a party's request for leave to amend. There is a strong presumption in favor of granting leave to amend." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 394 (5th Cir. 2024) (cleaned up and emphasis in original). "Factors for the court to consider include undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." *Williams v. Integon Nat'l Ins. Co.*, 132 F.4th 801, 805 (5th Cir. 2025) (cleaned up). Accordingly, given the strong presumption, there are countless cases within the Fifth Circuit allowing parties leave to amend their pleadings and responsive pleadings after summary judgment has been granted or filed, especially where new facts arise. *E.g., Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980) (granting leave to amend responsive pleading to raise new statute of limitations defense two and a half years into lawsuit and after summary judgment order); *Bamm, Inc. v. GAF Corp.*, 651 F.2d 389, 391 (5th Cir. 1981) (granting leave after partial summary judgment order); *Verde Mins., LLC v. Burlington Res. Oil & Gas Co., LP*, 360 F. Supp. 3d 600, 625 (S.D. Tex. 2019) (granting leave while summary judgment motions were pending). Before granting Experian leave to amend its answer pursuant to this case law, this Court must first grant Experian leave to modify the scheduling order, which is admittedly a more stringent standard and likely determinative. *See Golden v. Westlake Fin. Servs., LLC*, No. 4:24-CV-4093, 2025 WL 2598047, at *2 (S.D. Tex.

- 16 -

Aug. 5, 2025), *report and recommendation adopted*, No. 4:24-CV-04093, 2025 WL 2597699 (S.D. Tex. Sept. 8, 2025).

Regarding leave to modify the scheduling order under Rule 16—both as it relates to Experian's alternative motion for leave to amend its pleadings and alternative motion to modify the dispositive motions deadline—courts consider "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Peterson v. Bell Helicopter Textron, Inc.*, No. 4:10-CV-365-Y, 2013 WL 12124303, at *1 (N.D. Tex. Mar. 13, 2013) (internal quotation marks omitted). Rule 16 "permit[s] liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Texas Indigenous Council v. Simpkins*, 544 F. App'x 418, 421 (5th Cir. 2013) (internal quotation marks omitted) (granting motion for leave to amend where denying would "determine[] the outcome of the case"). Courts consistently allow modifications to amend pleadings for good cause, even after summary judgment, especially where "the movant [does not] know[] or should [not] have known of the facts upon which the proposed amendment is based [and then] fails to include them in" its responsive pleadings. *Vanzzini v. Action Meat Distributors, Inc.*, 995 F. Supp. 2d 703, 711–713 & n.2 (S.D. Tex. 2014) (internal quotation marks omitted) (allowing amendment of answer to add new affirmative defense after the deadline and at summary judgment because "the Fifth Circuit has determined that th[e affirmative defense] rule admits of some flexibility" and "it was not raised on the eve of trial"); *Peterson*, 2013 WL 12124303, at *2 (same, five months after a summary judgment order "[g]iven the harshness of disallowing Bell's requested amendment, and considering the proposed amendment's importance to Bell in reducing its exposure [at] trial"); *Mailing & Shipping Sys., Inc. v. Neopost USA, Inc.*, 292 F.R.D. 369, 373

(W.D. Tex. 2013) (granting leave to amend after summary judgment motions filed due to new, previously unavailable facts); *Energy XXI, GoM, LLC v. New Tech Eng'g, L.P.*, 787 F. Supp. 2d 590, 626 (S.D. Tex. 2011) (same). Courts can also freely allow summary judgment motions after court-imposed deadlines. *E.g., Peart v. Dorel Juv. Grp., Inc.*, 456 F. App'x 446, 448 (5th Cir. 2012) (allowing motion for summary judgment after court-imposed deadline because "Rule 56(b)[] [] allows a defendant to move for summary judgment at any time"); *Johnson v. United States*, 460 F.3d 616, 619–21 (5th Cir. 2006) (allowing motion for summary judgment after court-imposed deadline, and finding "[t]hough the caselaw expresses some concerns about the granting of summary judgment motions on the eve of trial, this is not an issue in this case, because the motion was filed a month in advance of the date set for trial," "[i]f the motion is denied, the court system is in the same position as if the defendant were not permitted to file at all at that time: The case would go to trial. In the rare case in which a motion for summary judgment will be granted even if it is filed only one month before trial, the plaintiff suffers no prejudice," and "it is the scheduling order, not rule 16(b) per se, that conflicts with rule 56(b). Because not even local court rules can diminish rights afforded to parties by the rules, it is questionable whether scheduling orders can do so") (internal citation omitted); *Spiller v. Ella Smithers Geriatric Ctr.*, 919 F.2d 339, 343 (5th Cir. 1990) (judge "impliedly granted" motion to amend pretrial order by allowing filing of a motion for summary judgment).

Here, Plaintiff himself alleged that the 2017 Bank of America account was his son's and indicated that his file was mixed in 2023. It was not until after the deadlines to amend the pleadings and file dispositive motions that Plaintiff claimed for the first time that his file was mixed before the statutory repose period. This Court cannot allow Plaintiff to deliberately or accidentally game the system and withhold knowledge of facts related to Experian's repose defense until almost a

- 18 -

year into this litigation such that Experian is barred from asserting a defense dispositive to this case.[2]

Further, the parties now agree as to when all of the accounts were mixed, and to the extent that Plaintiff will argue that "the violation that is the basis for [Experian's] liability," 15 U.S.C. 1681p(2), occurred after the 2018 and 2019 Bank of America accounts were mixed, such as by arguing that the violation was Experian's mixing of the 2024 USA Finance account, furnishing of consumer reports, or failing to have its algorithm retroactively detect the mixed file, he had the full opportunity to develop all of those facts. This entire litigation is about all of those things: the three mixed accounts, Plaintiff's credit denials and non-denials, and Experian's matching algorithm. Plaintiff deposed Experian's Rule 30(b)(6) witness, expert witness, and "[t]he Experian employee who has the most knowledge concerning Experian's matching logic for matching consumer information to consumer files," ECF 57-1 (Declaration of Nicolas S. Aalberg) at ¶ 4, regarding all of the accounts and denials at issue and Experian's matching procedures, and he received discovery from multiple creditors. Further, *that discovery is not over*. This Court just granted Plaintiff leave to compel five creditors' subpoena responses and leave to compel yet another deposition regarding Experian's matching procedures. ECF 86 (Order Granting Motion for Leave to File Motions to Compel Third-Party Compliance with Subpoenas); ECF 87 (Order Granting Motion for Leave to File a Motion to Compel Discovery). There is simply nothing that Plaintiff can point to that he could have developed in this case that he did not in response to Experian's repose defense.[3]

---

[2] This applies to the following factors: "rais[ing] the issue at a pragmatically sufficient time," "undue delay, bad faith or dilatory motive," "the explanation for the failure to timely move for leave to amend," "importance of the amendment," and "futility of the amendment."

[3] This applies to the following factors: "prejudice[] in [] ability to respond," "undue prejudice," and "potential prejudice." Regarding "repeated failures to cure deficiencies by amendments previously allowed," Experian has not

Accordingly, in the event this Court holds that the FCRA's statute of repose is not jurisdictional, it should grant these alternative motions such that Experian can assert its repose argument below.

**II.     Plaintiff's Claim Is Barred in its Entirety but at Least as to the 2018 and 2019 Bank of America Accounts, and He Does Not Establish Actual Damages as to the 2024 USA Finance Account.**

Unlike the separate and distinct statute of limitations, Experian's successive publications of consumer reports and failure to detect already-made inaccuracies do not restart the clock for the FCRA's statute of repose. Rather, that clock started as to all accounts when the files were mixed in 2018, barring Plaintiff's claim in its entirety; alternatively, the 2018 and 2019 Bank of America accounts are barred, and Plaintiff does not establish actual damages as to the 2024 USA Finance account.

*A.     The Statute of Repose Began Running When the Files Mixed in 2018.*

This lawsuit concerns the fact that Experian, admittedly, mixed the files of Plaintiff and his son when Experian's algorithm determined that Ronald Alexander Garcia Delgado was the same consumer as Ronald Alexander Garcia Diaz. *See* ECF 24-1 at 8 (Declaration of Experian's Expert at 5) (Once the files were mixed on one personal identification number (PIN), "Experian's system treated the information as belonging in one singular file for one singular consumer."); *accord., e.g.,* Ex. B (Transcript of Deposition of Plaintiff's Expert) at 59:3-12; ECF 31-4 (Plaintiff's Expert Report) at 35. Both parties agree and have stipulated that happened in 2018. Everything that has happened since that point was caused by the mix occurring in 2018. The number of accounts mixed and how many there were are irrelevant—what matters for purposes of the statute of repose is when the event happened that caused the problem in the first place. If a consumer reporting

---

previously moved to amend its answer. Regarding "availability of a continuance to cure such prejudice," no continuance is needed since no additional facts need to be developed to decide the repose issue.

agency mixes thirty accounts, then is the repose clock constantly restarted each time it adds another account to the singular, already-mixed file?  Certainly not, as that would defeat the entire purpose of repose, which ensures that "a defendant should be free from liability after the legislatively determined period of time" and begins when a defendant "design[s] or manufactur[es] a product." *CTS*, 573 U.S. at 8–9 (internal quotation marks omitted).  Because the files were mixed in 2018, all claims are barred by the statute of repose.

B.      *Successive Publications of Consumer Reports Do Not Restart the Clock for the FCRA's Statute of Repose.*

Each successive publication of a consumer report does not restart the clock for the FCRA's statute of repose—nor is publication required at all for "the violation that is the basis for such liability [to] occur[.]"  15 U.S. Code § 1681p(2).  While a consumer reporting agency publishing a mixed consumer report may in some circumstances be the basis for a 15 U.S.C. § 1681e(b) claim ("Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."), the FCRA's statute of repose "is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant" and "is not related to the accrual of any cause of action."  *CTS*, 573 U.S. at 8 (internal quotation marks omitted).  Similarly, "the injury need not have occurred, much less have been discovered."  *Id*. (internal quotation marks omitted).  "'To hold that a statute of repose must yield to the plaintiff's inability to discover her injury would treat a statute of repose like a statute of limitations, *and would effectively repeal this and all other statutes of repose*.'"  *Am. Hous. Found.*, 543 B.R. at 260 (emphasis in original) (quoting *Methodist*, 307 S.W.3d at 290).  The FCRA's statute of limitations involves "the date of discovery by the plaintiff of the violation that is the basis for such liability," 15 U.S. Code § 1681p(1), whereas the plain language of the FCRA's

- 21 -

statute of repose involves "the date on which the violation that is the basis for such liability occurs," 15 U.S. Code § 1681p(2). So case law relating to successive § 1681e(b) violations or injuries or statutes of limitations, including, but not limited to, case law holding that "the confidential nature of a credit report necessarily means that each new issuance results in a distinct and separate injury," *Hyde v. Hibernia Nat. Bank in Jefferson Par.*, 861 F.2d 446, 450 (5th Cir. 1988), is not just irrelevant, but antithetical to the purpose of repose. *See, e.g., Cano v. State Farm Mut. Auto. Ins. Co.*, 425 F. Supp. 3d 779, 785, 791 n.13 (W.D. Tex. 2019) (FCRA's statute of repose barred claim related to "incidents in 2010 and 2011" notwithstanding successive "February 2016" report); *Polk v. CitiMortgage, Inc.*, No. 3:17CV00077-HTW-LRA, 2018 WL 10408903, at *4 (S.D. Miss. Feb. 15, 2018) (" . . . Polk alleges that the inaccuracy occurred in April 2011" and "the five-year statute of repose created an absolute bar to his FCRA claims in April 2016" notwithstanding "discover[y of] the disputed entry at least by December 20, 2011"); *Kar v. Lincoln Auto. Fin. Servs.*, No. CV 24-05538-KS, 2024 WL 5274620, at *7 (C.D. Cal. Nov. 15, 2024) (rejecting argument that "'the [FCRA] violations were continuing misconduct and claims were triggered every time Defendant supplied false information to re-new the charge off, and thus considered a separate and distinct tort'" because "the alleged violation . . . arises from a discrete event" so "any alleged violation of [the FCRA] by Defendant occurred before [] the [] [] five-year statutory period")[4]; *McWhorter v. TransUnion, LLC*, No. 1:21-CV-01753-SDG-LTW, 2021 WL 8268164, at *6 (N.D. Ga. Aug. 16, 2021), *report and recommendation adopted*, No. 121CV01753SDGLTW, 2021 WL 8268217 (N.D. Ga. Nov. 29, 2021) (barring FCRA claim based on Experian's continued "reporting . . . since 07/2015," *id.*, ECF 3 at 7, "[r]egardless of when she discovered the alleged error").

---

[4] *Polk* and *Kar* refer to "the plaintiff's original discovery of the inaccurate information," *Polk*, 2018 WL 10408903, at *4, and "'continuing violations doctrine,'" *Kar*, 2024 WL 5274620, at *7, but only as they relate to the FCRA's statute of limitations.

- 22 -

C.    *Continued Failure to Detect Already-Made Inaccuracies Does Not Restart the Clock for the FCRA's Statute of Repose.*

A consumer reporting agency's failure to detect inaccuracies once they have already been made cannot constitute a continued "omission," *CTS*, 573 U.S. at 8, as being "the violation that is the basis for [] liability," 15 U.S.C. § 1681p(2), because it would render the FCRA's statue of repose inapplicable in, quite literally, every situation possible. *See id.* (referring to "*the date* on which *the violation* that is the basis for such liability *occurs*"). In other words, any time a consumer has an FCRA claim alleging that a consumer reporting agency did not "assure [] [] accuracy of the information concerning the individual about whom the report relates," 15 U.S.C. § 1681e(b), or remove "inaccurate" "information" after "conduct[ing] a [] reinvestigation," 15 U.S.C. § 1681i, then the FCRA's statute of repose would never apply because of the consumer reporting agency's purported continued "omission" of being able to retroactively detect the problem. The clock for the FCRA's statute of repose would be restarted ad infinitum, and it would be toothless. That cannot be the law. *See Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("It is, however, a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute.") (internal quotation marks omitted).

Rather, the Supreme Court was clear that "*the date* of the last culpable [] [] omission" referred to a specific omission in "designing or manufacturing a product" and then releasing it, *CTS*, 573 U.S. at 8 (emphasis added)—not purported problems in maintaining that product once released, which, again, would render statutes of repose pointless. *See, e.g., id.* at 6 (omission in sale of electronics plant started the clock); *California Pub. Employees' Ret. Sys.*, 582 U.S. at 505 (omission in securities registration statements started the clock); *F.D.I.C.*, 798 F.3d at 245 (omission in sale of mortgage-backed securities started the clock). In other words, there has to be a fixed "date" on which the violation that is the basis for liability "occurs," 15 U.S.C. § 1681p(2),

- 23 -

since the entire point is to bar a FCRA claim after a fixed and definite period of time. Since every 15 U.S.C. § 1681e(b) or 15 U.S.C. § 1681i violation involves an inaccuracy that continues until it is fixed, the repose clock must start at the date of the inaccuracy—not never. *See CTS*, 573 U.S. at 9 ("a repose period is fixed") (internal quotation marks omitted); *California Pub. Employees' Ret. Sys.*, 582 U.S. at 505, 508, 512 (same); F.D.I.C., 798 F.3d at 253 (same); *Balam-Chuc v. Mukasey,* 547 F.3d 1044, 1049 (9th Cir. 2008) ("fixed by statute and unrelated to any variable") (internal quotation marks omitted); *Prasad v. Holder*, 776 F.3d 222, 227 (4th Cir. 2015) (same).

> D.      *Plaintiff's Claim That Experian Mixed the 2018 and 2019 Bank of America Accounts Is Barred.*

Experian anticipates that Plaintiff will argue that the statute of repose restarts each time a new tradeline is added to the mixed file. As noted above, that is wrong. Once the files were mixed in 2018, **all** new tradelines would necessarily report from the mixed file, since that was the only file in Experian's records. Therefore, as described above, since the files were mixed in 2018, the statute of repose bars all claims related to the mixed file. However, even accepting Plaintiff's wrong argument, Plaintiff loses anyway. The parties agree that Experian mixed the only two negatively-reporting accounts, the 2018 and 2019 Bank of America accounts, before the repose period. This Court must dismiss Plaintiff's claim against Experian as to those two accounts.

> E.      *Plaintiff Does Not Establish Actual Damages as to the 2024 USA Finance Account.*

Under Plaintiff's theory of repose, the 2024 USA Finance Account, since it was added to the file within five years, would potentially still be in play for liability. But the parties do not dispute that the 2024 USA Finance Account was reporting positively. Thus, Plaintiff cannot prove actual damages against Experian for improving his credit score. *See* 15 U.S.C. § 1681o. Actual damages "are an essential element to proving a negligent violation of the FCRA" under 15 U.S.C. § 1681o. *E.g.*, *McDonald v. Equifax Inc.*, No. 3:15-cv-3212-B, 2017 WL 879224, at *4 (N.D. Tex.

- 24 -

Mar. 6, 2017).  Thus, where (as here) a plaintiff has no evidence of actual damages caused by a CRA's purported FCRA violation, summary judgment is appropriate.  *See, e.g.*, *Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432, 435 (5th Cir. 2016) (affirming grant of summary judgment to defendant in FCRA case where plaintiff "fail[ed] to create a material fact issue with respect to the existence of [actual] damages"); *Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 & n.19 (5th Cir. 2001) (claim for negligent violation of the FCRA failed as a matter of law where "there was insufficient evidence of actual loss"); *see also McDonald v. Equifax Inc.*, No. 3:15-CV-3212-B, 2017 WL 879224, at *4 (N.D. Tex. Mar. 6, 2017) ("As . . . Plaintiff's admission that he suffered no damages by Trans Union is conclusive, it is impossible for him to successfully prove a negligent violation of the FCRA against Trans Union."); *Jett v. Experian Info. Sols., Inc.*, No. 3:12-cv-2136-D, 2014 WL 2587613, at *12–14 (N.D. Tex. June 10, 2014) (granting summary judgment on negligence claims under the FCRA when plaintiff "failed to adduce evidence that would enable a reasonable trier of fact to find that Experian or Trans Union caused her alleged emotional damages"), *aff'd in part vacated in part on other grounds*, 614 F. App'x 711 (5th Cir. 2015); *Matise v. Trans Union Corp.*, No. Civ.A 3:96-cv-3353-D, 1998 WL 872511, at *6 (N.D. Tex. Nov. 30, 1998) (same).

This is especially true as to emotional damages.  While the Fifth Circuit's tolerance for claims of emotional distress is high, such a claim simply cannot stand as a matter of law in a situation like one, where Plaintiff never reviewed his Experian report for over seven years, *cf.* ECF 24 (Experian's First Motion for Summary Judgment) at ¶ 26 (collecting cites to the record in this regard) *with* ECF 31 (Plaintiff's Opposition to Experian's First Motion for Summary Judgment) at ¶ 26 (admitting this), and never reviewed it again for nearly another year after filing this lawsuit, ECF 24-1 at 61 (Delgado Tr. at 76:13-22) ("Q:  Have you looked at your Experian credit report

since you filed the lawsuit?  A:  No."), 80 (Delgado Tr. at 125:13-15) ("Q:  As you sit here today, do you know what Experian is currently reporting about you?  A:  No.")—and where the account in question *improved* his credit score.  *See* ECF 24-1 at 402 (March 7, 2024 Consumer Disclosures at 5).

A plaintiff's claim for emotional damages must be supported by something more than the plaintiff's own, self-serving conclusory allegations or lawyer's arguments.  *See Wagner v. BellSouth Telecommunications*, *In*c., 520 F. App'x 295, 298 (5th Cir. 2013).  To recover damages for "mental distress" under the FCRA, *Sapia v. Regency Motors of Metaire, Inc.,* 276 F.3d 747, 753 (5th Cir. 2002), a plaintiff must demonstrate his "intangible loss[es]" with a "a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award," *Cousin*, 246 F.3d at 371; *see Jett*, 2014 WL 2587613, at *12–14 (granting summary judgment on negligence claims under the FCRA when plaintiff "failed to adduce evidence that would enable a reasonable trier of fact to find that Experian or Trans Union caused her alleged emotional damages").  As the Fifth Circuit has emphasized, the plaintiff cannot rest simply on his "own conclusory assertions about emotional distress."  *Wagner*, 520 F. App'x at 298.  Accordingly, where the record contains only conclusory, uncorroborated assertions of a plaintiff's alleged emotional distress, summary judgment is appropriate.  Thus, in *Bacharach*, even though the plaintiff testified that she was a "complete wreck" and "had seen a number of medical professionals due to her anxiety and stress," the Fifth Circuit held that summary judgment was appropriate because her testimony was not corroborated and also "lack[ed] specificity and fail[ed] to show the nature and extent of emotional harm."  827 F.3d at 436.  Similarly, in *Cousin*, the Fifth Circuit held that an emotional damages award was unsupportable where the plaintiff's only evidence of his mental distress was his own testimony.  *See* 246 F.3d at 371.

- 26 -

Here, there is no dispute of fact that Plaintiff cannot prove he suffered emotional damages from Experian mixing a positively-reporting account, rather than from the negatively-reporting 2018 and 2019 Bank of America accounts (assuming claims against those accounts are barred by the FCRA's statute of repose), and especially considering that he was "stress[ed]" due to "receiv[ing] all these calls from these collection companies," *e.g.,* ECF 24-1 at 76–77 (Delgado Tr. at 112:16-113:18); ECF 1 at ¶ 170, which has nothing to do with Experian.  This Court must dismiss Plaintiff's claim as to the 2024 USA Finance account, which is his last remaining claim.

## CONCLUSION

This lawsuit must be dismissed.

Respectfully submitted this 19th day of November, 2025.

JONES DAY

By: */s/ Nicolas Aalberg*

    Nicolas S. Aalberg
    JONES DAY
    90 South Seventh Street, Suite 4950
    Minneapolis, Minnesota 55402
    Telephone: +1.612.217.8835
    Facsimile: +1.844.345.3178
    naalberg@jonesday.com

    *Counsel for Defendant*
    *Experian Information Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 19, 2025, I caused the foregoing to be electronically filed with the clerk of court for the U.S. District Court for the Eastern District of Texas using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Nicolas Aalberg*
Nicolas S. Aalberg