**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

RONALD ALEXANDER GARCIA DELGADO,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

**Civil Action No.:** 4:24-cv-00637

**PLAINTIFF RONALD ALEXANDER GARCIA DELGADO'S SECOND MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.**

Plaintiff Ronald Alexander Garcia Delgado ("Plaintiff") by and through the undersigned counsel, hereby submits this Second Motion for Summary Judgment against Defendant Experian Information Solutions, Inc. ("Experian").

## TABLE OF CONTENTS

I. INTRODUCTION .......... 3
II. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT .......... 4
III. SUMMARY OF THE ARGUMENT .......... 4
IV. UNDISPUTED MATERIAL FACTS .......... 4
V. LEGAL STANDARD .......... 6
VI. ARGUMENT .......... 7
A. By any definition of the word, Experian "prepared" consumer reports about Plaintiff in March and June 2024. .......... 7
B. Experian cannot carry its burden to prove that any report at issue was prepared before July 11, 2019 .......... 14
VII. CONCLUSION .......... 16

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 8
*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 8
*F.D.I.C. v. Giammettei*,
34 F.3d 51 (2d Cir.1994) .......... 8, 15
*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......... 8
*United States v. Kay*,
359 F.3d 738 (5th Cir. 2004) .......... 9
*United States v. Lowe*,
118 F.3d 399 (5th Cir.1997) .......... 9

## I. INTRODUCTION

This motion concerns a narrow affirmative defense that should not be permitted to distract from the issues that matter at trial. After discovery closed, the dispositive motion deadline expired, the parties briefed multiple summary judgment motions, and pretrial materials were prepared, Experian asserted a new statute of repose affirmative defense. The defense is premised on the idea that Plaintiff's claims are time barred because Experian mixed Plaintiff's credit file in 2018. But this Court already rejected that premise. The relevant question is not when Experian mixed Plaintiff's file; it is when Experian prepared the consumer reports forming the basis of Plaintiff's claims.

The undisputed answer is March and June 2024. Experian does not store complete, preassembled consumer reports for later transmission. Instead, when a subscriber makes a request, Experian retrieves data from separate tables, compiles a consumer report, and furnishes the report to the subscriber. That is how Experian prepared the consumer reports it furnished to NFM, Affirm, RentGrow, and Oportun, all less than four months before Plaintiff filed this lawsuit.

Experian's repose defense, therefore, fails as a matter of law. To prevail on that defense, Experian must show the consumer reports at issue were prepared more than five years prior to the filing of this case. Experian cannot point to *any* evidence to even suggest that the relevant reports were prepared before July 11, 2019. No such evidence exists. At most, Experian can point to file-level information that existed earlier, but this Court has already held that such evidence is not enough.

This issue was a waste of the parties' resources when Experian first raised it, and it remains a waste now. Allowing Experian to present this defense at trial would invite confusion, waste the jury's time and attention, and distract from the actual issue at trial: whether Experian followed reasonable procedures to assure maximum possible accuracy when it prepared Plaintiff's consumer

reports. Because the undisputed evidence establishes that the reports at issue were prepared in 2024, Plaintiff is entitled to summary judgment on Experian's statute of repose affirmative defense.

## II. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1. Whether Plaintiff is entitled to summary judgment on Experian's Eleventh Affirmative Defense under 15 U.S.C. § 1681p(2) when no genuine dispute of material fact exists that the consumer reports at issue were "prepared" within five years of Plaintiff's July 11, 2024 Complaint.

## III. SUMMARY OF THE ARGUMENT

Experian's statute of repose affirmative defense fails because the relevant consumer reports were prepared in 2024, not before July 11, 2019. Experian does not store completed consumer reports. It stores data in separate tables, then compiles that data into a consumer report only when a subscriber requests one. Thus, the reports furnished to NFM, Affirm, RentGrow, and Oportun were prepared when Experian compiled the data in March and June 2024. Because Experian bears the burden of proving its affirmative defense and because it has no evidence that any report at issue in this lawsuit was prepared before July 11, 2019, summary judgment is warranted.

## IV. UNDISPUTED MATERIAL FACTS

1. Plaintiff Ronald Alexander Garcia Delgado filed this action against Experian on July 11, 2024. Doc. 1.

2. The credit file that Experian maintained about Plaintiff contained several pieces of inaccurate information that belong to Plaintiff's son rather than Plaintiff, including: (1) a USA Finance Account; (2) a 2018 Bank of America account ("2018 BOA Account"); (3) a 2019 Bank of America account ("2019 BOA Account"); (4) a year of birth of 1995; and (5) Plaintiff's son's

name.

**Experian's Procedures for Storing Consumer Credit Information and Preparing Consumer Reports**

3. When Experian receives consumer credit information, it stores the data in its proprietary File One database, which consists of a series of separate tables, each containing a different type of data. Ex. 1, Deposition Transcript of Kimberly Cave ("Cave Dep. Tr."), 13:7-13.

4. The File One system contains data segregated into the following separate tables: (1) tradeline information; (2) public record information; (3) credit inquiry information; (4) consumer identifying information. Cave Dep. Tr., 13:14-14:14.

5. Experian does not store complete credit files; all consumer credit information stored by Experian is stored in separate tables which are in "different places." Cave Dep. Tr., 20:2-18.

6. Experian does not store completed or assembled consumer reports. Ex. 2, Experian's Expert Report ("Methvin Report"), at 11.

7. When Experian receives a request from a subscriber for a consumer report about a particular consumer, Experian compiles information about that consumer from each of the tables into a consumer report about that consumer. Cave Dep. Tr., 20:19-25; Methvin Report at 11-12.

8. After Experian publishes consumer reports to end users, Experian does not maintain copies of those consumer reports. Ex. 3, Experian's Responses to Plaintiff's First Set of Interrogatories, at 18 ("Experian does not maintain, in the ordinary course of business, copies of the consumer reports it has provided to third parties as contemplated by 15 U.S.C. § 1681a(d)."), 23 (same).

**Consumer Reports Prepared by Experian About Plaintiff**

9. On or about March 11, 2024, Plaintiff applied for credit with Nebraska Furniture Mart ("NFM"); in connection with that application, NFM obtained a consumer report about

Plaintiff from Experian. Doc. 26-7, NFM Denial;[1] Doc. 25, Plaintiff's Experian Admin Report (filed under seal) at 4 (identifying credit inquiry from Nebraska Furniture Mart dated March 11, 2024).

10. On or about March 12, 2024, Plaintiff applied for credit with Affirm; in connection with that application, Affirm obtained a consumer report about Plaintiff from Experian. Doc. 26-6, Affirm Denial; Doc. 25, Plaintiff's Experian Admin Report at 5 (identifying credit inquiry from Affirm dated March 12, 2024).

11. On or about March 13, 2024, Plaintiff applied for housing with J Street Property; in connection with that application, J Street Property obtained a consumer report about Plaintiff from RentGrow, who in turn obtained a consumer report about Plaintiff from Experian. Ex. 4, Plaintiff's RentGrow Report; Doc. 25, Plaintiff's Experian Admin Report at 6 (identifying credit inquiry from RentGrow with end user of J Street Property dated March 13, 2024).

12. On or about June 25, 2024, Plaintiff applied for credit with Oportun; in connection with that application, Oportun obtained a consumer report about Plaintiff from Experian. Doc. 26-9, Plaintiff's Oportun Denial; Doc. 25, Plaintiff's Experian Admin Report at 6 (identifying credit inquiry from Pathward NA/Oportun dated June 25, 2024).

## V. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a district court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby,*

[1] In the interest of efficiency, any documents to which Plaintiff cites herein that have already been filed with the Court are cited to using the docket entry numbers for the previous filings. However, if the Court prefers Plaintiff re-file exhibits specific to this Motion, Plaintiff can do so.

*Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). A factual issue is "genuine" when there is sufficient evidence that would allow a trier of fact to rule in favor of the non-movant, and a factual issue is "material" when the resolution might affect the outcome of the suit. *Id.* at 248. When a movant discharges its summary judgment burden, the nonmovant must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"Where a plaintiff uses a summary judgment motion […] to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element of] the [non-moving party's] case." *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir.1994) (internal quotations omitted); *see also Celotex Corp.*, 477 U.S. at 323-24.

## VI. ARGUMENT

### A. By any definition of the word, Experian "prepared" consumer reports about Plaintiff in March and June 2024.

The FCRA's statute of repose bars claims that are filed more than 5 years after a violation occurs. 15 U.S.C. § 1681p(2). This Court previously held that any "violations" committed by Experian occurred "when Defendant 'prepare[d]' Plaintiff's consumer reports." Doc. 140 ("MSJ Order"), at 8. The Court's holding, thus, implied that Experian could, theoretically, successfully argue that the statute of repose applied if Experian proved "that it prepared the reports one day and furnished them a different day." *Id.* at 7. However, because Experian made no argument concerning when it prepared the consumer reports at issue, the Court declined to discern the meaning of "prepare." *Id.*

The term "prepare" is not defined by the text of the FCRA. In the Fifth Circuit, it is a maxim that undefined terms in a statute are "interpreted according to their 'ordinary and natural meaning.'" *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (citing *United States v. Lowe*, 118 F.3d 399, 402 (5th Cir.1997)). Dictionary definitions of the term "prepare" denote some affirmative act to make something ready or to assemble something from multiple elements. *See*, *e.g.*, American Heritage Dictionary of the English Language (5th ed. 2022) ("Prepare: 1. To make ready beforehand for a specific purpose, as for an event or occasion: The teacher prepared the students for the exams. 2. To put together or make by combining various elements or ingredients; manufacture or compound: prepared a meal; prepared the lecture.").

Applying the ordinary and natural meanings of "prepare" found in the American Heritage Dictionary, the District of Connecticut noted that "[t]he term 'prepare' often indicates a combining of various elements." *Adams v. Nat'l Eng'g Serv. Corp.*, 620 F. Supp. 2d 319, 329 (D. Conn. 2009). There, a CRA was found to have "prepared" a consumer report when it combined information it obtained from another CRA with its own evaluation of that information and sent the combined product to the user. *Id*. Experian's process fits comfortably within this ordinary and natural meaning, because Experian combines elements from multiple separate tables into a single consumer report **that did not exist** before the moment it is compiled. That is "preparation" under the principles identified in *Adams*; in fact, Experian's procedure is far clearer than the CRA in *Adams* because Experian's data does not exist as a completed consumer report until Experian's system assembles the underlying data in response to a subscriber's request. Thus, even giving full effect to the Court's distinction between "prepare" and "furnish," the undisputed evidence shows that Experian prepared the reports at issue when it compiled them for NFM, Affirm, Oportun, and RentGrow in March and June 2024.

Because Plaintiff filed his lawsuit against Experian on July 11, 2024, the FCRA's statute of repose cannot, as a matter of law, bar Plaintiff's claims unless the consumer reports at issue were prepared prior to July 11, 2019. Experian does not – and cannot – dispute that Experian **furnished** consumer reports about Plaintiff to NFM, Affirm, Oportun, and RentGrow in March and June 2024. Doc. 25, Plaintiff's Experian Admin Report, at 4-6. Thus, the only operative question is, as this Court noted in its previous decision on the subject, whether Experian "prepared the reports one day and furnished them a different day." Order at 7.

The nature of Experian's business practices fundamentally and unequivocally forecloses any argument that Experian prepared Plaintiff's consumer reports on any date other than the day each report was furnished to each user. Experian's system for storing consumer credit information is decentralized, storing data in tables that are separated based on the type of data. *See* Cave Dep. Tr., 13:14-14:14 (testifying about separate tables for tradeline information, public record information, credit inquiry information, and consumer identifying information). Because of this decentralized system, Experian **does not store** complete credit files, with the data in these separate tables stored in "different places." *Id*., 20:2-18. In addition to not storing completed credit **files**, Experian also does not store completed or assembled consumer **reports**. Methvin Report at 11. What this means, practically speaking, is that when Experian receives a request from a subscriber for a consumer report about a particular consumer, Experian's system retrieves data about that consumer from each of the separate tables, "compiles" all data about that consumer into a consumer report, and sends the completed consumer report to its customer. *Id*., 20:19-25.

This process clearly satisfies any definition of the word "prepare." Before Experian receives a request from a subscriber for a consumer report, there is no consumer report that exists in Experian's system waiting to be sent. There are only discrete pieces of consumer credit

information that are maintained in different places. It is only after a subscriber requests a report that Experian's system retrieves the relevant information from those separate tables, matches that information to the consumer, combines the data into a single output, compiles the resulting consumer report, and communicates the consumer report to the requesting user. In other words, **only after a subscriber request has been made** does Experian "make ready" a consumer's consumer report for the "specific purpose" of furnishing the consumer report to the subscriber. *See* American Heritage Dictionary of the English Language (5th ed. 2022) (first definition of "prepare"). Or, stated another way, Experian "put[s] together" consumer reports by "combining various elements." *Id.*, (second definition of "prepare").

Further, once Experian has completed each *ad hoc* transaction by retrieving, compiling, and publishing each new consumer report, Experian does not maintain a copy of the consumer reports sent to third parties for future use. Ex. 3, Experian's Responses to Plaintiff's First Set of Interrogatories, at 18, 23.

Experian cannot collapse the distinction between **storing** consumer credit information and **preparing** a consumer report. This Court has already rejected that move. The Court recognized that the FCRA distinguishes between a consumer "file" and "report," and held that Experian's prior repose argument failed because it relied on the alleged 2018 mixing of Plaintiff's credit file rather than the preparation of Plaintiff's consumer reports. MSJ Order at 6-8. That distinction is dispositive here. Maintaining tradeline data, inquiry data, public-record data, and identifying information in separate tables is not the preparation of a consumer report. At most, those database entries are raw materials from which a report may later be prepared. The consumer report comes into existence only when Experian gathers, matches, and compiles those materials into the consumer report that is then furnished to a third-party subscriber.

This conclusion also follows from the statutory definition of "consumer report." A consumer report is a "communication" of "any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for" a regulated purpose. 15 U.S.C. § 1681a(d)(1). Information stored internally in separate File One tables is not a communication to anyone. It is raw data waiting to be compiled. A consumer report comes into existence only when Experian assembles that information into the communication furnished to the requesting user.

Plaintiff acknowledges that the Court cited to a non-binding opinion in which the Southern District of Indiana opined that the word "prepare" implies "something more active, such as the addition of information." MSJ Order at 7 (citing *Doherty v. Experian Info. Sols., Inc.*, No. 1:19-CV-02421-RLY-DML, 2021 WL 12311389, at *4 (S.D. Ind. Nov. 30, 2021)). However, this statement must be read in conjunction with the preceding sentence: "The court concludes that a consumer report is not 'prepared' every time a report containing the same information is published." *Id*. In other words, *Doherty* does not stand for the principle that a consumer report can **only** be "prepared" when new information is added to a consumer's file. Rather, the *Doherty* court merely rejected the proposition that republication of a previously prepared consumer report containing the same information in the same form constitutes a new preparation each time it is transmitted. The phrase "such as" introduces an example rather than an exhaustive definition, but the underlying principle is clear: "prepare" requires some affirmative act beyond simply mailing a static, already completed report. *See Clay v. Equifax, Inc.*, 762 F.2d 952, 959 (11th Cir. 1985) (distinguishing between "preparation" and "mailing" a consumer report). That principle is fully

consistent with Plaintiff's position: Experian does far more than mail a preexisting document. Experian gathers dynamic data from multiple separate sources, compiles the responsive data into a brand new consumer report, then furnishes the consumer report to the subscriber. That is an affirmative act of preparation consistent with the principle set forth in *Doherty*.

Even if Experian attempts to narrow "prepare" to mean **only** the point at which new information is added to a consumer report, that definition still does not help Experian. The consumer reports furnished to NFM, Affirm, Oportun, and RentGrow necessarily were **prepared** on the dates they were furnished because each request caused Experian to add new, date-specific inquiry information to Plaintiff's file and, therefore, to Plaintiff's consumer reports. For example, the consumer report sent to NFM on Plaintiff's March 11, 2024, included "More Than 3" inquiries from the previous 30 days, and contained tradeline information that was updated in February 2024. *See* Ex. 5, Screenshots From NFM Credit Bureau Report System at 1 (showing "More Than 3 Inquiries w/in 30 day"), 2 (showing balance dates of February 22 and February 25, 2024 across three tradelines). This "new" information could not have been added to Plaintiff's consumer report more than 30 days before because the information did not exist prior to then. For the same reason, the subsequent consumer reports sent to Affirm, Oportun, and RentGrow all contained new information – namely, at minimum: (1) updated balance dates for the tradelines reported in Plaintiff's consumer reports; and (2) the addition of new inquiries, including the inquiries from NFM, Affirm, Oportun, and RentGrow. *See*, *e.g.*, Ex. 4, Plaintiff's RentGrow Report at 3 (showing balance date of March 10, 2024 and inquiry from Nebraska Furniture Mart dated March 11, 2024).

Thus, even under a far more forgiving "additional information" definition, each consumer report at issue in this litigation was unquestionably **prepared** at the time Experian received each subscriber request, compiled information about Plaintiff – or purportedly about Plaintiff – into a

consumer report, then communicated that consumer report to each subscriber.

Plaintiff also acknowledges the Court's prior observation that Congress used the terms "prepare" and "furnish" and that the terms, therefore, should not be treated as identical. MSJ Order at 7; *see also* 15 U.S.C. § 1681a(f). Plaintiff does not ask the Court to collapse that distinction. The question is not whether "prepare" and "furnish" mean the same thing in the abstract; the question is **when** Experian prepared the consumer reports at issue. And Experian's testimony supplies the answer: when Experian receives a request from a subscriber, Experian retrieves the consumer credit information **at that time**, compiles the information into a new consumer report **at that time**, then communicates the prepared consumer report in response to the subscriber's request. Cave Dep. Tr., 20:19-25.

That sequence preserves the distinction identified by the Court. Preparation is the active step by which Experian **compiles** consumer credit information into a consumer report ready for its intended use; furnishing is the subsequent **communication** of that report to the requesting user. But because Experian does not store complete, preassembled consumer reports, and because it compiles consumer reports **only** in response to a subscriber request, the two events occur contemporaneously for all practical purposes in the context of Experian's consumer reporting procedures. At most, this distinction could exist in the nanosecond after Experian's system completes the compilation of a consumer report and immediately before that consumer report is transmitted to the subscriber. That theoretical interval – if one even exists given the speed of electronic communication – does not create a fact issue that any of the consumer reports at issue in this litigation were prepared **years** earlier, much less before July 11, 2019.

Accordingly, the Court need not equate "prepare" with "furnish" in order to resolve Experian's affirmative defense. Nor must the Court hold that every later publication of a previously

completed consumer report constitutes a new preparation. The undisputed evidence here is narrower and simpler: Experian does not store completed consumer reports for later transmission. It prepares new consumer reports in response to each and every subscriber request. Because the reports at issue were, by any definition, prepared in March and June 2024, the reports were prepared within five years of the date of Plaintiff's July 11, 2024 Complaint. Accordingly, summary judgment in Plaintiff's favor on Experian's statute of repose affirmative defense is warranted.

### B. Experian cannot carry its burden to prove that any report at issue was prepared before July 11, 2019.

Experian's statute of repose affirmative defense fails for the additional and independent reason that Experian bears the burden of proving the factual prerequisites to its statute-of-repose defense. A statute of repose is an affirmative defense, and the defendant bears the burden of proving that the challenged claim falls outside the applicable repose period. *See Taylor v. Rothstein Kass & Co., PLLC*, No. 3:19-CV-1594-D, 2020 WL 554583, at *10 (N.D. Tex. Feb. 4, 2020) ("A statute of repose provides an absolute affirmative defense, and the defendant bears the burden of proving all factual requisites to the statute's application."). Plaintiff can carry his Rule 56 burden by showing an absence of evidence supporting Experian's affirmative defense. *Giammettei*, 34 F.3d at 54. Thus, Experian must prove that the "violation that is the basis for" Plaintiff's claims occurred more than five years before Plaintiff filed suit. 15 U.S.C. § 1681p(2).

This Court has already determined what that means in this case. The Court has already rejected Experian's argument that the relevant date is the date on which Experian allegedly mixed information in Plaintiff's credit file; instead, the Court made clear that the relevant date is when Experian "prepare[d]" Plaintiff's consumer reports. MSJ Order at 8. Accordingly, to carry its burden on the statute of repose affirmative defense, Experian **must** identify some evidence that the

specific consumer reports furnished to NFM, Affirm, RentGrow, and Oportun were prepared before July 11, 2019. Since no such evidence exists, Experian cannot do so.

The undisputed evidence establishes the opposite. Plaintiff filed this lawsuit on July 11, 2024. Doc. 1. The reports at issue were furnished in March and June 2024. Doc. 25, Admin Report at 4-6. Experian does not store complete, preassembled consumer reports. Cave Dep. Tr., 20:2-18. Rather, when Experian receives a subscriber request, its system retrieves consumer credit information from separate tables and compiles that information into the consumer report furnished to the subscriber. *Id.*, 13:14-14:14, 20:19-25. On this record, there is no evidence that any of the consumer reports at issue existed – much less were prepared – before the subscribers made the relevant requests in March and June 2024.

All Experian has is the alleged mixing of Plaintiff's credit file in 2018 before the reports were furnished. But this Court has already held that such evidence is insufficient because § 1681e(b) regulates the preparation of consumer **reports**, not the mere maintenance of information in a consumer **file**. MSJ Order at 6-8. Information stored internally in Experian's database is not itself a consumer report. As this Court noted, a consumer report requires a "communication" of information for an FCRA-covered purpose. 15 U.S.C. § 1681a(d)(1). Thus, Experian cannot satisfy its burden by pointing to raw database entries or file-level information that predated July 11, 2019. It must show that the reports at issue were **prepared** before that date.

Experian has no such evidence. The undisputed record shows that Experian prepared the reports at issue when it compiled Plaintiff's consumer credit information in response to the March and June 2024 subscriber requests. Because those dates fall well within five years of Plaintiff's July 11, 2024, Complaint, no reasonable jury could find that Experian has satisfied the factual prerequisites of its statute of repose defense. Accordingly, Plaintiff is entitled to summary

judgment on Experian's statute of repose affirmative defense.

## VII. CONCLUSION

This case should be tried on the claims and defenses that actually belong in front of the jury. Experian's repose affirmative defense does not. It rests on a theory this Court has already rejected: that the alleged mixing of information in Plaintiff's credit file in 2018, rather than the preparation of the consumer reports at issue, triggers the FCRA's statute of repose. Now that the question is properly focused on when the reports were prepared, the answer is undisputed.

Experian prepared the reports at issue when it compiled them in response to subscriber requests in March and June 2024. Experian has no evidence that the consumer reports at issue in this case, and furnished to NFM, Affirm, RentGrow, or Oportun, existed before those requests, much less before July 11, 2019. Allowing Experian to present this defense at trial would serve no legitimate purpose. It would confuse the issues, waste trial time, and distract from the merits.

For these reasons, Plaintiff respectfully requests that the Court grant this Motion and enter summary judgment in Plaintiff's favor on Experian's repose affirmative defense.

RESPECTFULLY SUBMITTED on this 15th day of May 2026.

**CONSUMER JUSTICE LAW FIRM**

By: */s/ McKenzie Czabaj*
McKenzie Czabaj, AZ Bar No. 036711
James Ristvedt, AZ Bar No. 035938
David A. Chami, AZ Bar No. 027585
8095 North 85th Way
Scottsdale, Arizona 85258
Phone: (480) 626-2376
Fax: (480) 613-7733
Email: mczabaj@consumerjustice.com
Phone: (480) 626-1956
Email: jristvedt@consumerjustice.com
Phone: (480) 626-2359
Email: dchami@consumerjustice.com

Susan Mary Rotkis, AZ Bar 032866
2290 East Speedway Boulevard
Tucson, Arizona 85719
Phone: (602) 807-1504
Email: srotkis@consumerjustice.com

*Attorneys for Plaintiff*
*Ronald Alexander Garcia Delgado*

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

**CONSUMER JUSTICE LAW FIRM**

By: */s/ Gracelyn Stewart*
Gracelyn Stewart