# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

|  |  |
|---|---|
| RONALD ALEXANDER GARCIA DELGADO, <br><br> Plaintiff, <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC., <br><br> Defendant. | **Civil Action No.:** 4:24-cv-00637 <br><br> **PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS** |

Plaintiff Ronald Alexander Garcia Delgado ("Plaintiff"), pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Final Judgment entered by this Court on July 20, 2026 (Doc. 219) following the jury's verdict in his favor (Doc. 211), hereby requests that the Court award Plaintiff's reasonable attorneys' fees and costs from Defendant Experian Information Solutions, Inc. ("Experian"). The total hours expended and the hourly rates requested are both reasonable and awardable under the lodestar method as construed by the Fifth Circuit. Plaintiff therefore requests entry of an award of **$510,410.00** in attorneys' fees and **$19,140.88** in expenses and costs. This request is supported by the following memorandum and the attached exhibits.

i

## I.    PLAINTIFF IS ENTITLED TO HIS REASONABLE FEES AND COSTS

The FCRA entitles a prevailing plaintiff to an award of reasonable attorneys' fees and costs. *See* 15 U.S.C. § 1681o(a)(2) (in "the case of any successful action to enforce any liability under this section," a negligently noncompliant defendant is liable for "the costs of the action together with reasonable attorney's fees as determined by the court"); *Haberman v. PNC Mortg. Co.*, 915 F. Supp. 2d 800, 803 (E.D. Tex. 2013) (Mazzant, J.) (an award of attorneys' fees is appropriate "for any 'successful action' to enforce liability under the Fair Credit Reporting Act").

On July 10, 2026, following a five-day trial, Plaintiff prevailed on the sole claim tried when the jury returned a verdict finding that: (1) Experian negligently violated the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy when it prepared consumer reports about Plaintiff; and (2) Plaintiff is entitled to $95,000[1] in actual damages. Doc. 211. On July 20, 2026, the Court entered Final Judgment for Plaintiff in that amount. Doc. 219. Because Plaintiff is the prevailing party, he is entitled to his reasonable attorneys' fees and costs.

## II.    PLAINTIFF'S LODESTAR CALCULATION IS PRESUMED REASONABLE

The attorneys' fees calculation begins with the determination of a "lodestar" amount, which is the product of multiplying a reasonable number of hours by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate").

In the Fifth Circuit, "[t]he computation of a reasonable attorneys' fee award is a two-step process." *Haberman*, 915 F. Supp. 2d at 803 (citing *Rutherford v. Harris County, Texas*, 197 F.3d 173, 192 (5th Cir. 1999)). First, courts calculate the lodestar; they then consider whether the twelve

---

[1] The jury awarded $98,700 in actual damages and reduced by $3,700 for failure to mitigate.

1

*Johnson* factors warrant upward or downward adjustment. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324-31 (5th Cir. 1995); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

"There exists a strong presumption of the reasonableness of the lodestar amount." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006). Additionally, because the lodestar is presumptively reasonable, it "should be modified only in exceptional cases." *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 898 (E.D. Tex. 2017) (Mazzant, J.) (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 765 (Tex. 2012)).

The fee applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates[.]" *Fessler v. Porcelana Corona de Mex., S.A. de C.V.*, 23 F.4th 408, 415-16 (5th Cir. 2022) (quoting *Hensley*, 461 U.S. at 437). "But once calculated, the party seeking modification of the lodestar under the *Johnson* factors bears the burden." *Id.* at 416 (citing *La. Power & Light Co.*, 50 F.3d at 329) (affirming district court's refusal to decrease the lodestar award).

Critically, "[m]any of [the *Johnson*] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate [] and should not be double-counted." *Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998). In particular, the complexity of the issues and the results obtained are "fully reflected" in the lodestar. *Heidtman v. City of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). Plaintiff seeks only the unenhanced lodestar. The *Johnson* factors are discussed solely to confirm the reasonableness of the lodestar and to show no downward adjustment is warranted, not to support any upward departure.

Applying the lodestar method to Plaintiff's request and removing hours that have been written off in the exercise of billing judgment (*see discussion in* Section III.A.1, *infra*), Plaintiff's

counsel and staff reasonably expended the following hours and the following rates:

| Timekeeper | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| McKenzie Czabaj | Attorney | $450 | 354.5 | $159,525.00 |
| James Ristvedt | Attorney | $550 | 306.2 | $165,660.00 |
| David A. Chami | Attorney | $950 | 119.8 | $109,060.00 |
| Michael Yancey III | Attorney | $500 / $550 | 74.9 | $38,615.00 |
| Susan Rotkis | Attorney | $725 | 6.4 | $4,640.00 |
| Jenna Dakroub | Attorney | $500 | 1.4 | $700.00 |
| Kendra Penningroth | Attorney | $450 | 1.8 | $810.00 |
| Brianna Frohman | Paralegal | $250 | 55.2 | $13,800.00 |
| Roxanne Harris | Paralegal | $250 | 1.3 | $325.00 |
| Mari Cervantes | Paralegal | $200 | 59.6 | $11,920.00 |
| Gracelyn Stewart | Paralegal | $150 | 21.0 | $3,150.00 |
| Ana Romero | Paralegal | $150 | 7.8 | $1,170.00 |
| Alexia Bedolla | Paralegal | $150 | 3.8 | $570.00 |
| Ilce Plancarte | Paralegal | $150 | 3.1 | $465.00 |
| **Total** | | | **1016.8** | **$510,410.00** |

The hours expended and rates requested are supported by contemporaneous billing records (Ex. A, "Fee Statement"), the United States Consumer Law Attorney Fee Survey Report (Ex. B, "Fee Survey"), declarations from McKenzie Czabaj (Ex. C), James Ristvedt (Ex. D), David A. Chami (Ex. E), Michael Yancey III (Ex. F), Susan Rotkis (Ex. G), Theodore Bartholow (Ex. H), Micah Adkins (Ex. I), Ethan Preston (Ex. J), and the analysis below.

### III.    THE *JOHNSON* FACTORS SUPPORT GRANTING THE REQUESTED FEES

When determining reasonable attorneys' fees, the Fifth Circuit considers the following:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Rutherford*, 197 F.3d at 192 n.23 (citing *Johnson*, 488 F.2d at 717-19). Of these, the court "should give special heed to the time and labor involved, the customary fee, the amount involved and the

3

result obtained, and the experience, reputation and ability of counsel." *Saizan*, 448 F.3d at 800 (citing *Migis*, 135 F.3d at 1047). Plaintiff addresses each factor below.

### A.    Time and labor required of counsel.

"Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12.

The Fee Statement provides an itemized, task-by-task record of the time expended investigating, litigating, preparing, and trying Plaintiff's claim. The work included pre-suit investigation; preparation of the Complaint; extensive party, third-party, and expert discovery; numerous depositions; **three** rounds of summary judgment briefing; pretrial disclosures and motion practice; and preparation for and participation in a five-day jury trial.

### 1.    *Plaintiff's counsel exercised billing judgment.*

This Court's opinions have repeatedly emphasized the importance of parties seeking fees to demonstrate they exercised billing judgment to identify fees "written off as unproductive, excessive, or redundant." *Tech Pharm. Servs.*, 298 F. Supp. 3d at 905 (citing *Saizan*, 448 F.3d at 799); *see also Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-CV-792, 2020 WL 4583464, at *7 (E.D. Tex. Aug. 10, 2020) (Mazzant, J.) (citation omitted) (applying reduction of 10% where a party failed to exercise billing judgment by failing to identify "a single minute that was written off as unproductive, excessive, or redundant."); *Natour v. Bank of Am., N.A.*, No. 4:21-CV-00331, 2022 WL 10177665, at *8 (E.D. Tex. Oct. 17, 2022) (citation omitted) ("The Court should include only those hours reasonably expended, and exclude any time that is excessive, duplicative, unnecessary, or inadequately documented.").

Before submitting this Motion, counsel painstakingly reviewed all entries within the Fee Statement and voluntarily wrote off **191.4** hours, totaling **$70,412.50** in fees (approximately 15.8%

of all total hours and 12.1% of total hourly fees). These entries remain in the Fee Statement in red text so that the Court may verify Plaintiff's voluntary reductions. The write-offs generally include: (1) purely clerical services, such as scheduling and filing; (2) potentially duplicative services, such multi-attorney conferences (3) work that did not contribute to the result, such as motions drafted but not filed; and (4) travel time[2]. The remaining hours reflect work reasonably required to meet the defenses Experian chose to mount,[3] and this factor supports the requested lodestar.

2.    *The four-person trial team was necessary and non-duplicative.*

The Fifth Circuit has held that "[t]he time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted." *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 768 (5th Cir. 1996) (citation omitted). However, seeking compensation for multiple timekeepers is proper where there is "a legitimate need for the involvement of more than one attorney." *Id*. at 768. Indeed, while courts need not award fees when one attorney merely has a "passive role of an observer," when attorneys participate in "supporting role[s] […], the time should not be excluded." *Kenai Ironclad Corp. v. CP Marine Servs., LLC*, No. CV 19-2799, 2022 WL 3223990, at *12 (E.D. La. July 21, 2022), *report and recommendation adopted*, No. CV 19-2799, 2022 WL 3214520 (E.D. La. Aug. 9, 2022).

---

[2] The standard practice in the Fifth Circuit is to award 50% of counsel's actual travel time. *See discussion in Lewallen v. City of Beaumont*, No. CIV.A. 1:05-CV-733TH, 2009 WL 2175637, at *10-11 (E.D. Tex. July 20, 2009), *aff'd*, 394 F. App'x 38 (5th Cir. 2010). Thus, counsel's travel time is billed at a 50% rate. However, fees related to travel time for the paralegals who were necessary at trial – totaling $4,500 – have been written off in their entirety.

[3] Plaintiff also sought to avoid unnecessary fees caused by Experian. For example, in November 2025, counsel advised Experian that, given how it prepares consumer reports, no evidence supported a statute of repose defense. Experian nevertheless pursued the defense through extensive briefing in jury instructions (Doc. 98 at 50-60), a summary judgment motion (Doc. 102), Plaintiff's summary judgment motion – granted one day after briefing closed (Docs. 159, 184) – and a motion for reconsideration – denied one day after Plaintiff responded (Docs. 185, 190). Although Experian had no evidence it prepared any challenged report more than five years before suit, it continued its pursuit of the defense and forced Plaintiff to incur substantial, avoidable fees.

Here, Plaintiff was represented at trial by two co-lead trial attorneys who divided – rather than duplicated – work necessary for trial. In the lead-up to trial, Mr. Chami primarily handled tasks relating to preparation of Plaintiff's fact witnesses, voir dire, and opening statement. *See* Fee Statement entries dated July 3-5, 2026. On the same dates, Mr. Ristvedt prepared the substantive cross-examination of Experian's retained expert, including analyzing technical documents, developing impeachment sequences, and integrating exhibits into the planned cross-examination. *Id*. This division allowed each attorney to prepare distinct portions of the case.

That division continued at trial. Mr. Chami and Mr. Ristvedt divided the examinations of the six live witnesses and presenting four deposition read-in; Mr. Chami delivered the opening statement, and Mr. Ristvedt delivered closing argument. When one attorney conducted an examination, the other remained actively engaged, evaluating live testimony against the evidentiary record in real time, identifying relevant exhibits and potential impeachment material, and, where appropriate, providing the examining attorney with suggested follow-up questions or impeachment points. This allowed the trial team to respond as testimony developed and reflected active trial work, not duplicative attendance. As another district court within the Fifth Circuit held, it is reasonable for "two attorneys to share duties during a 5-day trial, particularly when they are represented to have shared obligations equally." *Kenai Ironclad Corp.*, 2022 WL 3223990, at *12.

The trial paralegals likewise performed distinct and necessary functions. Ms. Frohman, the lead trial paralegal, operated trial-presentation technology, served as the read-in witness for four sets of deposition designations, and maintained internal documents tracking the evidence presented at trial. These are substantive, attorney-delegable tasks, rather than clerical overhead. *See Miniex v. Houston Hous. Auth.*, No. CV 4:17-0624, 2019 WL 4920646, at *9 (S.D. Tex. Sept. 13, 2019) (recognizing that "preparing trial exhibits" is legal work traditionally performed by attorneys).

6

Ms. Cervantes served a categorically different role. In addition to her paralegal responsibilities, she provided real-time Spanish interpretation so that Plaintiff – who is not fluent in English – could understand the proceedings and communicate with counsel as needed. Her work duplicated no other team member's efforts and was necessary to ensure Plaintiff could meaningfully participate in his own trial. *Cf. Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 574 n.8 (2012) (recognizing that oral translation is "indispensable" to a party's "ability to communicate with each other, with witnesses, and with the court.").

Accordingly, because each member of the four-person trial team was necessary and non-redundant, the full team's trial time should not be reduced.

**B.      Novelty and difficulty of the questions presented.**

FCRA litigation presents recurring challenges: consumers typically cannot fund litigation against national corporations like Experian, requiring counsel to advance fees and costs without any assurance of eventual payment (here, for more than two years); most relevant evidence is controlled by the defendant; reputational and emotional-distress damages are often difficult to quantify and prove; and, proving corporate liability requires detailed analysis of the defendant's procedures against the backdrop of an evolving body of federal law.

This case presented additional challenges. Establishing liability required disentangling Plaintiff's identity from his son's and investigating Experian's matching logic and file-building procedures through successive corporate depositions. Plaintiff was required to prove those procedures were unreasonable without access to the corporate document that governed them. Additionally, Plaintiff's limited English proficiency required interpretation throughout intake, discovery, depositions, and trial. The litigation was further complicated by Experian's repeated pursuit of a baseless statute of repose defense, attempts to stay the case based on an appeal in unrelated litigation, and mid-trial document production that required immediate review. Because

7

novelty and complexity are presumptively reflected in the lodestar, Plaintiff relies on this factor only to confirm that no downward adjustment is warranted. *Heidtman*, 171 F.3d at 1043.

### C.      Skill requisite to perform the legal service properly.

Preparing and trying an FCRA mixed-file case requires highly specialized knowledge and skill. This is especially true here, where the institutional and resource advantages lay entirely with Experian: the largest consumer reporting agency on earth, represented by sophisticated counsel, defending its core matching procedures. The expertise of Plaintiff's counsel was critical not merely to presenting the case, but to identifying and obtaining technical evidence necessary to prove it.

The pursuit of Timothy Sumida's testimony illustrates the point. Plaintiff specifically noticed Experian's 30(b)(6) deposition to include a topic related to its matching procedures. Doc. 113-4 at 6. When Experian's initial designee could not provide substantive testimony on that subject, counsel continued to pursue a witness with actual knowledge of Experian's matching logic; Experian resisted those efforts and later produced Kimberly Cave – who lacked technical training and offered only generalized testimony – only after a telephonic conference with the Court. *See* Doc. 74 at 4-5. When Cave also provided unsatisfactory testimony, Plaintiff was forced to seek further relief from the Court over Experian's objections. *See* Docs. 74, 76, 80, 87. Only after the Court granted Plaintiff leave to file a motion to compel did Experian identify Sumida – the patent holder for its Find Consumer algorithm – as an appropriate witness. Sumida's testimony exposed significant limitations in Experian's matching logic and became a vital part of Plaintiff's trial presentation. Without counsel's specialized knowledge of consumer reporting and persistence through two inadequate corporate depositions, the jury would never have heard that evidence.

Trying a case like this one to verdict – including cross-examination of Experian's corporate designees and retained expert, presentation of the testimony of Plaintiff and his family through an interpreter, and distilling the highly technical nature of Experian's matching algorithm in a way

8

that is easily understood by a lay jury – demanded the specific trial skills reflected in counsel's declarations. This factor supports the requested lodestar.

### D.    Preclusion of other employment due to acceptance of the case.

A fundamental characteristic of FCRA consumer litigation is the consumer-plaintiff's inability to pay fees and costs, requiring an FCRA plaintiff's lawyer to bear those expenses up front with the expectation of being compensated through the FCRA's fee-shifting provision. This necessarily means that FCRA plaintiffs' attorneys, such as the undersigned, are inherently financially limited in the number and types of other cases that they may accept. This case illustrates the financial implications of litigating an FCRA claim to trial: setting aside the significant amount of attorneys' fees incurred during this case, the out-of-pocket expenses exceeded $30,000. Plaintiff's counsel not only bore the burden of paying these expenses up front but also bore the risk of **never** being repaid for these expenses if Plaintiff was unsuccessful at trial. Thus, the two-plus-years of attorney and paralegal time devoted to this matter – culminating in a week of trial in Sherman by a multi-member trial team – was time necessarily unavailable for other billable engagements. This factor supports the requested lodestar award.

### E.    Customary fee charged in matters of the type involved.

The customary fee is measured by rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). The relevant community is generally the district in which the court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). This Court has recognized the Dallas-Fort Worth ("DFW") market as an appropriate benchmark for cases filed in the Sherman Division. *Solferini v. Corradi USA, Inc.*, No. 4:18-CV-00293, 2021 WL 5415293, at *5 (E.D. Tex. Nov. 19, 2021) (Mazzant, J.) (collecting cases); *Griffin v. O'Brien, Wexler, & Assocs., LLC*, 680 F. Supp. 3d 772, 789 n.7 (E.D.

Tex. 2023).

Reasonable rates may be established through counsel's declarations, relevant market data, and the Court's own knowledge of prevailing fees. *See Griffin*, 680 F. Supp. 3d at 789. Plaintiff therefore supports the requested rates with the sworn declarations of counsel, the Fee Survey, this Court's prior fee awards, and declarations from other attorneys practicing in the DFW market.

This Court's opinions show a steady upward trajectory in consumer law rates. In 2013, this Court approved rates of $225-$350 in an FCRA case. *Haberman*, 915 F. Supp. 2d at 805-808. By 2022, the Court found rates of $385-$595 were **below** prevailing Sherman and DFW rates. *Natour*, 2022 WL 10177665, at *7-8 (E.D. Tex. Oct. 17, 2022) (Mazzant, J.). In *Natour*, the Court favorably cited cases with rates of $450-$862 for attorneys and $150-$250 for staff. *Id.* (citing *Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, No. 3:16-CV-02355, 2021 WL 6428370, at *6 (N.D. Tex. Dec. 17, 2021); *Tech Pharm. Servs.*, 298 F. Supp. 3d at 906-07). The Court also approved $400 per hour in a straightforward FDCPA default judgment case and substantially higher rates in complex litigation. *Griffin*, 680 F. Supp. 3d at 789; *see also* Section III.L, *infra*.

The Fee Survey independently confirms the reasonableness of Plaintiff's rates. Based on 2017-2018 data, DFW consumer law rates reached $488 per hour (75% median) and $875 (95% median). Fee Survey at 458. Courts have regularly relied on this Fee Survey and its prior editions when determining reasonableness of consumer law rates. *Id.* at 507-28; *see also Hutchison v. Lenders Portal Direct, LLC*, No. 4:17-CV-02456-RBH, 2018 WL 3241255, at *2 (D.S.C. July 3, 2018) (collecting cases); *Hickman v. Trans Union LLC*, No. 24-CV-00584-LKG, 2026 WL 1893179, at *3 (D. Md. July 1, 2026); *Singh v. Experian Info. Sols., Inc.*, No. 0:25-CV-00378 (KMM/DJF), 2025 WL 3527202, at *3 (D. Minn. Dec. 9, 2025); *Just. v. M.N.S. & Assocs., LLC*, 638 F. Supp. 3d 554, 564 (W.D.N.C. 2022).

10

Because the Fee Survey reflects 2017-2018 rates, an inflation adjustment is necessary to compare to current market rates. *See Walker*, 99 F.3d at 773 (recognizing compensation at current rather than historical rates). Using January 2018 as the reference point and June 2026 CPI data, the DFW figures, adjusted for inflation, are $657 per hour (75% median) and $1,179 per hour (95% median). *See CPI Inflation Calculator*, U.S. Bureau of Lab. Stat., https://www.bls.gov/data/inflation_calculator.htm (last visited July 29, 2026). Supporting declarations from consumer law attorneys practicing in the DFW metropolitan area confirm these rates are consistent with rates commonly billed by attorneys in that market. *See* Ex. H, Bartholow Decl.; Ex. I, Adkins Decl.; Ex. J, Preston Decl. Here, all requested attorney rates are below the inflation-adjusted 95% median for DFW, and all but two are below the 75% median.

1.    *Attorney McKenzie Czabaj*[4]

McKenzie Czabaj has practiced federal consumer protection law since 2021 and served as lead counsel in this matter from intake through trial preparation. Her responsibilities included drafting the Complaint, directing written discovery, taking and defending depositions, briefing dispositive motions, and assisting with trial. Czabaj Decl. ¶¶ 9-11. Ms. Czabaj's requested rate of $450 is supported by her central role in a case tried to verdict and the DFW market evidence discussed above. The Fee Survey median rate for DFW attorneys was $350 in 2017-2018, or $472 adjusted for inflation. Ms. Czabaj's requested rates also fall comfortably within or below the ranges approved in *Tech Pharm. Servs.*, *Natour*, and *Solferini*.

2.    *Managing Attorney James Ristvedt*

Mr. Ristvedt has practiced exclusively in FCRA litigation since being licensed in 2020 and currently serves as a Managing Attorney and the firm's in-house trial counsel. Before practicing

---

[4] The accompanying declarations provide additional information concerning each attorney's experience, expertise, professional credentials, and role in this litigation.

law, he spent approximately ten years at a consumer reporting agency where he worked as a compliance and audit executive, developing and auditing policies for compliance with the FCRA. He has since served as lead counsel in successful jury trials, appeals, and dispositive motion proceedings, assisting consumers in recovering several million dollars. Ristvedt Decl. ¶¶ 1-6. He is a recognized authority on the FCRA in the consumer protection legal community. *Id*. ¶ 4.

Here, Mr. Ristvedt served as co-lead trial counsel, conducted third-party depositions, led Plaintiff's successful statute of repose briefing, cross-examined Experian's corporate representative, and delivered closing arguments. Mr. Ristvedt's requested rate of $550 is supported by the DFW market evidence discussed above. Additionally, Mr. Ristvedt's rate of $550 per hour has been expressly found reasonable in multiple federal fee awards, including following contested fee briefing in a mixed/merged file credit reporting case. Ristvedt Decl. ¶ 7; *see also Hickman*, 2026 WL 1893179 (mixed/merged file case involving a "big three" credit bureau following a contested fee petition); *Brown v. First Advantage Background Services Corp.*, No. 1:23-CV-00195, Doc. 114 (M.D.N.C. Jan. 21, 2026). The Fee Survey 75% median rate for DFW attorneys in 2017-2018 was $488, or $657 adjusted for inflation. Mr. Ristvedt's rate is more than 15% lower than the inflation-adjusted 75% median DFW rate and falls within or below the range of rates approved by the Court in *Tech Pharm. Servs.*, *Natour*, and *Solferini*.

### 3.    *Managing Partner David A. Chami*

David A. Chami has practiced since 2010 and is the co-founder and Managing Partner of Consumer Justice Law Firm. During the past decade, he has focused primarily on consumer protection and civil rights litigation, serving as lead or supervising counsel in more than 1,500 consumer matters, trying more than fifteen cases to verdict, and recovering more than $100 million for his clients. He also serves on the Executive Board of the National Association of Consumer Advocates and teaches consumer law as an Adjunct Professor at Arizona State University Sandra

12

Day O'Connor College of Law. Chami Decl. ¶¶ 2, 5-12. In this matter, Mr. Chami served as co-lead trial counsel, deposed Experian's 30(b)(1) witness, conducted witness examinations, and directed trial strategy.

Mr. Chami's requested rate of $950 is supported by his qualifications, the relevant market evidence, and a long, documented progression of his court-approved rates. *Hickman*, 2026 WL 1893179 ($725/hr in 2025); *Brown*, No. 1:23-CV-00195, Doc. 114 ($725/hr in 2024 and 2025); *In re Walker*, No. 22-31612 JDA, 2024 WL 4177830 (Bankr. E.D. Mich. Sept. 12, 2024) ($725/hr in 2024); *Gross v. CitiMortgage Inc.*, No. CV-18-02103-PHX-ROS, 2023 WL 5133712 (D. Ariz. Aug. 10, 2023) ($725/hr in 2023); *Parker v. Peters & Freedman, LLP*, No. SA CV 17-0667-DFM, 2019 WL 174979 (C.D. Cal. Jan. 11, 2019) ($500/hr in 2017); *Sullivan v. Salt River Project Agricultural Improvement and Power District*, No. 2:12-cv-01810, Doc. 90 (D. Ariz. Oct. 23, 2014) ($400/hr in 2014). His requested rate also falls well below the inflation-adjusted DFW ninety-fifth-percentile rate of $1,179 and is virtually identical to the $951.22 rate this Court approved in consumer litigation in *Cruson v. Jackson National Life Insurance Co.*, No. 4:16-CV-00912, 2021 WL 3702483, at *3 (E.D. Tex. June 4, 2021) (Mazzant, J.). Given Mr. Chami's first-chair trial experience, industry reputation, expertise, and central role in trying this case to verdict, $950 falls within the prevailing market for similarly qualified counsel. *Cf. Imperium IP Holdings (Cayman), Ltd. v. Samsung Electronics Co.*, No. 4:14-CV-00371, 2018 WL 1602460, at *7–8 (E.D. Tex. Apr. 3, 2018) (Mazzant, J.) (approving $1,100/hr); *Corrente v. Charles Schwab Corp.*, No. 4:22-CV-470, 2025 WL 3268923, at *7 (E.D. Tex. Nov. 24, 2025) (Mazzant, J.) (approving $1,750/hr given "the novelty and complexity of the issues").

    4.    *Managing Attorney Michael Yancey III*

Michael Yancey III is a Managing Attorney, CJL's Legal Drafting Manager, and its Clerk Supervisor. His practice is concentrated in federal consumer protection litigation, including FCRA

13

matters, and he regularly supervises and substantially revises dispositive motions, discovery, fee, and appellate briefing. He has also served as trial counsel in multiple jury trials and has experience presenting complex factual and legal issues to courts and juries. Yancey Decl. ¶¶ 1, 5-10, 13-18.

In this case, Mr. Yancey principally handled complex briefing, legal research, and trial-support issues. Mr. Yancey's requested rates are $500 per hour for 2025 and $550 per hour for 2026. Both of Mr. Yancey's rates are supported by the DFW market evidence discussed above. Mr. Yancey's 2025 rate of $500 per hour was found reasonable by a federal court in 2026. *See Hickman*, 2026 WL 1893179. Since 2025, Mr. Yancey's rate increased to $550 to account for his additional experience and responsibilities. Yancey Decl. ¶¶ 19-23. His requested rates fall comfortably within the ranges approved in *Tech Pharm. Servs.*, below the rates in *Natour* and *Solferini*, and well below the inflation-adjusted 75% median for DFW consumer law attorneys.

5.      *Attorneys Susan Rotkis, Jenna Dakroub, and Kendra Penningroth*

Susan Rotkis is a Partner at CJL, has practiced law since 1996, and has represented consumers exclusively since 2010, handling more than 550 federal consumer cases. She has extensive FCRA experience, regularly teaches consumer protection CLEs, and took the deposition of Affirm in this matter. Courts have repeatedly approved her rates in consumer litigation, including $675 per hour for work performed in 2025; her requested $725 rate reflects her additional experience and specialized expertise. Rotkis Decl. ¶¶ 1-15.

Jenna Dakroub and Kendra Penningroth are Managing Attorneys who provided discrete support on this matter, including reviewing motions to compel filed in other districts. Ms. Dakroub has practiced since 2019 and bills at $500 per hour; Ms. Penningroth has practiced since 2021 and bills at $450 per hour. Chami Decl. ¶ 35.

Attorneys Rotkis, Dakroub, and Penningroth each billed fewer than 10 hours, making their combined contribution to the lodestar modest. Their requested rates are supported by their

experience and fall within or below the ranges this Court has approved.

F.       **Whether the fee is fixed or contingent.**

Due to the nature of the FCRA's fee-shifting provision, Plaintiff's fee arrangement was wholly contingent upon the outcome. Counsel advanced all fees and costs for more than two years with no guarantee of payment. While the contingent nature of the fee cannot support an enhancement (*City of Burlington v. Dague*, 505 U.S. 557, 567 (1992)), it confirms that the requested unenhanced lodestar does not represent a windfall and should not be reduced based on counsel's risk of nonpayment.

G.       **Time limitations imposed by the client or the circumstances.**

As an FCRA case, this action did not involve any particular time limitation. This factor is therefore generally inapplicable to the determination of Plaintiff's lodestar fee award.

H.       **Amount involved and the results obtained.**

Plaintiff prevailed on the sole claim tried. The jury found that Experian negligently violated § 1681e(b), causing $98,700 in actual damages – including $75,000 for emotional distress – and the Court entered a $95,000 judgment after the mitigation offset. This complete liability victory and substantial compensatory recovery strongly support the requested lodestar.

Experian may argue the requested fees should be reduced to bear some proportional relationship to the judgment, but the Fifth Circuit has rejected that approach. *See Combs v. City of Huntington, Texas*, 829 F.3d 388, 396-98 (5th Cir. 2016) (a court abuses its discretion by reducing a lodestar based on the belief that fees must be proportionate to damages). The entire point of federal fee-shifting provisions is to ensure that claims serving important public interests can attract competent counsel even when individual recoveries are modest. *See City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986); *cf. Millea v. Metro-North R.R. Co.,* 658 F.3d 154, 169 (2d Cir. 2011) (the "whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate

15

to the plaintiff's recovery" and where financial recoveries are likely to be small, calculating attorneys' fees proportionate to damages "runs directly contrary to the purpose of fee-shifting statutes").

This Court applied that principle in *Haberman*, declining to reduce a $125,207.50 lodestar where an FCRA plaintiff recovered only $1,700 because the plaintiff succeeded on all FCRA claims. 915 F. Supp. 2d at 807-08, 813-14. Here, Plaintiff's $95,000 recovery after a contested jury trial presents an even stronger record. The amount recovered confirms Plaintiff's success; it cannot serve as a touchstone for reducing the lodestar merely to achieve proportionality between the fee award and the judgment.

**I.      Experience, reputation, and ability of counsel.**

The experience, reputation, and ability of each timekeeper is set forth in Section III.E., *supra*, and in the attached declarations. The rates requested for each timekeeper are reasonable and consistent with the fees charged by attorneys and paralegals of comparable skill, experience, and reputation in the DFW market.

**J.      "Undesirability" of the case.**

As discussed above, consumers like Plaintiff are typically unable to pay attorneys' fees and costs. Because of this, such cases are unattractive to most attorneys. Congress understood this and therefore codified fee-shifting provisions in the FCRA, allowing a consumer's attorneys' fees and costs to be paid by culpable corporate defendants. However, this fee-shifting only occurs when attorneys are successful. This structure, while effective in incentivizing certain attorneys to take otherwise potentially uncompensated work, still results in FCRA cases such as this one being less desirable than other, billable cases. This is particularly true when, as here, the case is litigated through a lengthy, contentious discovery period and tried to verdict against a national credit bureau. The inherent undesirability of FCRA cases weighs in favor of granting Plaintiff's

requested lodestar fees in their entirety.

**K.      Nature and length of professional relationship between attorney and client.**

Plaintiff did not have a professional relationship with Plaintiff's counsel prior to seeking representation in this matter. This type of relationship stands in contrast to an established client relationship where "regular" clients may receive discounted fees. *See Johnson*, 488 F.2d at 719. Thus, this factor does not weigh in favor of a reduction in Plaintiff's requested lodestar fees.

**L.      Awards in similar cases.**

Most FCRA cases settle well in advance of trial, without the entry of a fee award, making directly comparable post-verdict awards uncommon. The most relevant comparators, however, come from this Court's own docket:

- *Haberman*, 915 F. Supp. 2d at 805-08 (awarding full lodestar in FCRA case; $225-$350 per hour attorney rates and $120/hr paralegal rate in 2013);
- *Tech Pharm. Servs.*, 298 F. Supp. 3d at 906-07 (rates of $860 per hour reasonable);
- *Solferini*, 2021 WL 5415293, at *5-6 ($650 per hour);
- *Cruson*, 2021 WL 3702483, at *3 ($823.94 and $951.22 per hour in consumer class action);
- *Griffin*, 680 F. Supp. 3d at 789 ($400 per hour in FDCPA default-judgment case);
- *Corrente*, 2025 WL 3268923, at *7 (rates up to $1,750 per hour reasonable given novelty and complexity).

Measured against this Court's own awards – spanning consumer, commercial, patent, and class litigation over more than a decade – and adjusted for inflation, every rate requested here falls within, and most fall well below, the ranges this Court has historically found reasonable. This factor weighs in favor of granting Plaintiff's requested lodestar fees in their entirety.

**IV.    PLAINTIFF'S PARALEGAL FEES ARE RECOVERABLE AT THE LOCAL MARKET RATE**

A "reasonable attorney's fee" under a federal fee-shifting statute also compensates the work of paralegals, billed at prevailing market rates rather than at cost. *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 285-89 (1989). In the Fifth Circuit, "[f]ees for paralegal time are recoverable

17

if such is the customary practice in the relevant legal market." *Walker*, 99 F.3d at 773 (citing *Jenkins*, 491 U.S. at 288). "[T]he prevailing practice in the Eastern District of Texas is to charge clients for paralegal and law clerk work on a separate hourly basis. Paralegal and law clerk fees are therefore recoverable here at the relevant market rates." *Lewallen*, 2009 WL 2175637, at *5.

This Court has clarified that while paralegal fees may be recovered, they may be recovered "only to the extent that the paralegal performs work traditionally done by an attorney," and that neither paralegals nor attorneys may recover fees for purely clerical work. *Crane v. Rave Rest. Grp., Inc.*, No. 4:20-CV-13-ALM, 2022 WL 403291, at *6 (E.D. Tex. Feb. 9, 2022), *vacated on other grounds*, No. 21-40880, 2023 WL 3735567 (5th Cir. May 31, 2023) (Mazzant, J.) (citing *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982). Accordingly, Plaintiff has voluntarily written off clerical tasks such as filing, scheduling, calendaring, or other purely administrative work. *See discussion in* Section III.A.1., *supra*.

Here, Plaintiff's requested paralegal rates range from $150 to $250 per hour and are consistent with what this Court has approved – even before adjusting for inflation. *See*, *e.g.*, *Tech Pharm. Servs.*, No. 4:15-cv-00766, Doc. 386 at 15 (Oct. 31, 2017) (requested staff rates from $150 to $275); *id.*, 298 F. Supp. 3d at 908 (reducing requested rates of $150-$275 by 5%); *Haberman*, 915 F. Supp. 2d at 805 (approving $120/hr for paralegal work performed in 2012); *Copeland v. Alamo Billing Co.*, No. 4:20-CV-00393-SDJ-CAN, 2021 WL 7500786, at *9 (E.D. Tex. Dec. 17, 2021), *report and recommendation adopted*, No. 4:20-CV-393-SDJ, 2022 WL 782742 (E.D. Tex. Mar. 14, 2022) (approving $200/hr for paralegal work performed in 2021).

Plaintiff's requested paralegal rates are tiered according to seniority and responsibility. The $150 rate applies to standard substantive paralegal work, while the higher rates are reserved for senior or managing paralegals who perform specialized supervisory, trial-related, or bilingual

18

work. Ms. Cervantes' $200 rate reflects both her senior paralegal responsibilities and her work as a fluent Spanish interpreter during witness preparation, pretrial proceedings, and trial. Ms. Frohman and Ms. Harris are managing paralegals responsible for supervising and training staff and monitoring case readiness; Ms. Frohman also served as lead trial paralegal, assisting with presenting exhibits, deposition read-ins, trial worksheets, tracking what was presented and how it was presented at trial, and witness and exhibit preparation. Chami Decl. ¶¶ 31-35.

The Fee Survey's local market data provides further support for these rates. The average billable paralegal rate in DFW in 2017-2018 was $140, equivalent to approximately $189 in June 2026. Six of the nine paralegals[5] who participated in the prosecution of this case were billed at $150, below the inflation-adjusted DFW rate. Ms. Cervantes' $200 rate approximates the inflation-adjusted DFW average, while the $250 managing paralegal rates modestly exceed that average to reflect supervisory responsibilities and specialized trial functions beyond routine paralegal work.

## V.   PLAINTIFF'S COSTS INCURRED IN THIS ACTION

Section 1681o(a)(2) entitles Plaintiff to "the costs of the action" in addition to reasonable attorneys' fees. Beyond the costs taxable under 28 U.S.C. § 1920, courts in this Circuit "adhere to the principle that reasonable out-of-pocket expenses that are part of the costs normally charged to a fee-paying client may be recovered as part of an attorney's fee award." *Corrente*, 2025 WL 3268923, at *8 (quoting *Copeland*, 2021 WL 7500786, at *10). This includes "all reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, [and] travel" which "are plainly recoverable in [attorney's] fee awards[.]" *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School Bd.*, 919 F.2d 374, 380 (5th Cir. 1990).

---

[5] The lodestar table in Section II., *supra*, identifies only seven paralegals, since that table does not include paralegals who only performed work in this case that was ultimately written off. However, two additional paralegals, Alyssa Baca and Shaun Pambid, both performed paralegal work at a $150 rate which was written off as it related to clerical tasks.

The complete itemization of costs of this action is set forth in the Fee Statement, which covers filing fees, service fees, deposition-related fees, Spanish-language interpreter fees, photocopying and printing of trial exhibits and transcripts, admission fees, and reasonable travel and lodging for the trial team for the five-day trial in Sherman, Texas. Supporting invoices and receipts are included. Ex. K, Invoices and Receipts.

Plaintiff will separately file a Bill of Costs under § 1920 and Local Rule CV-54 for $13,374.21 in taxable filing, copying, deposition, and interpreter costs, highlighted in yellow in the Fee Statement. Plaintiff seeks the remaining $19,140.88 in customarily billed litigation expenses as part of the fee award.[6]

## VI.    PLAINTIFF IS ENTITLED TO RECOVER FEES EXPENDED IN THE PREPARATION OF THIS MOTION

In the Fifth Circuit, "[i]t is settled that a prevailing plaintiff is entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation." *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) (citations omitted). Plaintiff has therefore included the time spent preparing this fee petition and respectfully reserves the right to supplement the request with fees incurred in responding to any opposition or performing other necessary fee-related work.

## VII.    CONCLUSION

For the reasons discussed herein, Plaintiff respectfully requests that the Court award him reasonable attorneys' fees in the amount of **$510,410.00**, which reflects a total of $580,822.50 minus $70,412.50 in written off hourly fees. Plaintiff further respectfully requests that the Court award him reasonable costs in the amount of **$19,140.88**, which reflects Plaintiff's total costs of $32,515.09 minus the $13,374.21 in § 1920 costs that Plaintiff will seek via a Bill of Costs.

---

[6] Experian has indicated it opposes Plaintiff's Bill of Costs. To the extent the Court determines any of the expenses identified by Plaintiff are not recoverable taxable costs, Plaintiff seeks recovery of those expenses as a component of the fee award.

RESPECTFULLY SUBMITTED on this 3rd day of August 2026.

**CONSUMER JUSTICE LAW FIRM**

By: */s/ James Ristvedt*
James Ristvedt, AZ Bar No. 035938
McKenzie Czabaj, AZ Bar No. 036711
David A. Chami, AZ Bar No. 027585
8095 North 85th Way
Scottsdale, Arizona 85258
Phone: (480) 626-1956
Email: jristvedt@consumerjustice.com
Phone: (480) 626-2376
Email: mczabaj@consumerjustice.com
Phone: (480) 626-2359
Email: dchami@consumerjustice.com

Susan Mary Rotkis, AZ Bar 032866
2290 East Speedway Boulevard
Tucson, Arizona 85719
Phone: (602) 807-1504
Fax: (480) 613-7733
Email: srotkis@consumerjustice.com

*Attorneys for Plaintiff*
*Ronald Alexander Garcia Delgado*

21

**CERTIFICATE OF CONFERENCE**

I hereby certify that on July 30, 2026, Plaintiff's counsel conferred with Experian's counsel regarding the relief requested herein, and Experian is opposed.

**CONSUMER JUSTICE LAW FIRM**

By: */s/ James Ristvedt*
James Ristvedt

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2026, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

**CONSUMER JUSTICE LAW FIRM**

By: */s/ Brianna Frohman*